**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DONOVAN HARGRETT,

             Plaintiff,

v.

AMAZON.com DEDC LLC,

             Defendant.

And

MICHAEL AUSTIN and DEOLINDA S.M.
BONDE,

*on behalf of himself and on themselves*
*and of all others similarly situated,*

             Plaintiffs,

v.

AMAZON.com DEDC LLC,

             Defendant.

CASE NO. 8:15-cv-2456-T-26EAJ

CASE NO. 8:15-cv-2588-T-26JSS

**DEFENDANT'S MOTION TO DISMISS COUNTS I AND II OF PLAINTIFFS'**
**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6), Defendant Amazon.com DEDC, LLC ("Amazon") moves to dismiss the claims brought by Plaintiffs Donovan Hargrett, Michael Austin, and Deolinda Bonde ("Plaintiffs") for alleged violations of 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) of the Fair Credit Reporting Act ("FCRA") (Counts I and II).

## I.   INTRODUCTION

Plaintiffs applied to work at one of Amazon's fulfillment centers in Ruskin, Florida.  Plaintiffs allege that in connection with their on-line employment applications, they each completed and signed disclosure and authorization forms (the "D&A Forms") (which Plaintiffs attach as Exhibit B).  The D&A Forms were captioned "Background Check Disclosure" and "Background Check Authorization."  The "Background Check Disclosure" disclosed that Amazon would obtain a background check in connection with each Plaintiff's on-line employment application pursuant to the FCRA, and the "Background Check Authorization" requested each Plaintiff's authorization for the release of such information, including criminal history information.  The D&A Forms were clear and conspicuous, they contained all of the disclosures required by the FCRA, and Plaintiffs do not and cannot allege that *they* were somehow confused by the forms or that they did not agree to have a background check performed on them.

Nonetheless, Plaintiffs contend that the D&A Forms violated § 1681b(b)(2)(A) (Counts I and II), because they were part of the employment application, included state law notices, and contained other information Plaintiffs contend to be extraneous information.  Plaintiffs' claims fail because:  (1) they do not and cannot allege a single *factual* allegation showing they suffered any concrete harm because of the manner by

which the FCRA disclosure and authorization language (which Plaintiffs agreed to) was presented to them, and, therefore, they lack standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016); (2) the D&A Forms did not violate the FCRA; and (c) even if there was a technical violation, it was based upon an objectively reasonable reading of § 1681b(b)(2)(A)—and, thus, not "willful" as a matter of law.

**First**, in *Spokeo*, the Supreme Court recognized that "even in the context of a statutory violation" of the FCRA, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury in fact requirement of Article III." *Id.* at 1549.  Instead, a plaintiff must allege "actual" and "real" harm as a result of the statutory violation to satisfy his or her Article III burden.  *Id.* at 1549-50.

The Eleventh Circuit recently clarified how to apply these principles.  In its first **precedential** opinion applying *Spokeo*, the Eleventh Circuit dismissed a statutory claim under state law for lack of Article III standing.  The Eleventh Circuit made clear that, under *Spokeo*, the relevant question is not whether a statute has been violated, but, instead,  "whether [the plaintiff] was **harmed** when this statutory right was violated." *Nicklaw v. Citimortgage, Inc.*, No. 15-14216 -- F.3d -- , 2016 WL 5845682, at *3 (11th Cir. Oct. 6, 2016) (emphasis added).  The Eleventh Circuit clarified that a plaintiff must allege sufficient **facts** of actual harm **flowing** from the alleged violation to have standing. *Id.*  Because the plaintiff did not allege facts showing any concrete harm (or a material risk of harm) from the manner by which his mortgage satisfaction was recorded (*i.e.*, the alleged statutory violation), the Eleventh Circuit dismissed the appeal for lack of standing. *Id.* at *3-4.

Consistent with *Spokeo* and the Eleventh Circuit's controlling decision in *Nicklaw*, an ever-growing majority of courts have applied *Spokeo* to reject the very § 1681b(b)(2)(A) claims that Plaintiffs assert here for lack of standing.  *See, e.g.*, *Gunther v. DSW, Inc.*, No. 15-C-1461, 2016 WL 6537975, at *5 (E.D. Wis. Nov. 3, 2016) (no standing to pursue § 1681b(b)(2)(A) claims); *Tyus v. United States Postal Serv.*, No. 15-CV-1467, 2016 WL 6108942, at *6 (E.D. Wis. Oct. 19, 2016) (same); *Hopkins v. Staffing Network Holdings, LLC*, No. 16 C 7907, 2016 WL 6462095, at *4 (N.D. Ill. Oct. 18, 2016) (same); *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2016 WL 6090723, at *8 (D. Minn. Oct. 18, 2016) (same); *Berrelez v. Pontoon Sols., Inc.,* No. 15-cv-1898-CAS(FFMx), 2016 WL 5947221, at *5 (C.D. Cal. Oct. 13, 2016) (same); *Nokchan v. Lyft, Inc.*, No. 15-cv-03008, 2016 WL 5815287, at *1 (N.D. Cal. Oct. 5, 2016) (same); *Landrum v. Blackbird Enterprises, LLC*, No. CV H-16-0374, 2016 WL 6075446, at *4 (S.D. Tex. Oct. 3, 2016) (same); *Fisher v. Enter. Holdings, Inc.*, No. 4:15CV00372 AGF, 2016 WL 4665899, at *1 (E.D. Mo. Sept. 7, 2016) (same); *Groshek v. Time Warner Cable, Inc.*, No. 15-c-157, 2016 WL 4203506, at *2 (E.D. Wis. August 9, 2016) (same); *Smith v. Ohio State Univ.*, No. 2:15-CA-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (same); *but see Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 3653878, at *5 (E.D. Va. June 30, 2016) (finding standing to bring § 1681b(b)(2)(A) claims).

Here, as in *Spokeo*, *Nicklaw*, *Gunther*, *Tyus*, *Hopkins*, *Shoots*, *Berrelez*, *Nokchan, Landrum, Fisher, Groshek,* and *Smith,* Plaintiffs suffered no concrete harm as a result of the ***format*** of the D&A Forms that they admittedly filled out and electronically submitted to obtain employment with Amazon.   The D&A Forms were conspicuously marked

3

"Background Check Authorization" and "Background Check Disclosure," and contained all of the disclosure and authorization language required by the FCRA.  Although Plaintiffs now contend that they suffered a "privacy" and "informational" injury, they allege no *facts* to support these conclusory allegations—much less show how they were somehow harmed from the format of the D&A Forms.

In addition, Plaintiffs' conclusory allegations of "informational" and "privacy" injuries do not flow from the alleged violation.   There was no "informational injury" because Plaintiffs were not deprived of any information.  They received all the necessary FCRA disclosure and authorization language under § 1681b(b)(2)(A).  At most, Plaintiffs received *too much* information—but that is not an injury at all, much less a concrete one that gives rise to Article III standing.  Likewise, Plaintiffs cannot claim that they have suffered a "privacy injury" from the format of the D&A Forms because they admittedly authorized Amazon to obtain and review the background reports, so that they could obtain employment with Amazon.  Because Plaintiffs have not and cannot plausibly allege any actual harm, they lack standing to bring their § 1681b(b)(2)(A) claims.

*Second*, even if Plaintiffs had standing to assert their § 1681b(b)(2) claims (which they do not), Counts I and II should be dismissed for the additional reason that the D&A Forms did not violate § 1681b(b)(2)(A).  They provided clear and conspicuous language advising Plaintiffs that Amazon was going to obtain a background check report for employment purposes and sought authorization to do so.  They did not contain a release of liability; they were independent, stand-alone electronic forms (requiring assent and a unique electronic signature); and the extrinsic language Plaintiffs complain about was

nothing more than additional information about certain rights under state law and the

background check process.  Nor do Plaintiffs allege that *they* were confused by the D&A

Forms or that *they* did not authorize Amazon to obtain the background check reports.

Because the D&A Forms were compliant, Counts I and II fail as a matter of law.

*Lastly*, even if there was a technical violation of § 1681b(b)(2)(A), Counts I and II

fail for another independent reason:  Plaintiffs seek only statutory damages, yet cannot

show that Amazon "willfully fail[ed]" to comply with the FCRA.  15 U.S.C. §

1681n(a)(1)(A).  The Supreme Court has made clear that a defendant does not act

"willfully"—and, hence, statutory damages are not available under § 1681n—when its

conduct rests upon a "reading of the statute, albeit erroneous, [that] was not objectively

unreasonable."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

While Plaintiffs' legal theory is that the D&A Forms did not consist "solely" of

Amazon's disclosure that the consumer report may be obtained, the word "solely" in §

1681b(b)(2)(A)(i)—when read in the proper context—is not so limited.   The term

"solely" is ambiguous because the FCRA expressly contemplates that the stand-alone

document will include other language, such as language authorizing the background

report and information about the employee.  And the Federal Trade Commission ("FTC")

has published guidance explaining that an employer can include "additional information"

in the FCRA disclosure, provided "it doesn't confuse or detract from the notice."

Applying *Safeco*, courts have dismissed with prejudice nearly identical claims,

holding that the inclusion of a few paragraphs of extraneous (non-release) information in a

FCRA disclosure form is not an objectively unreasonable reading of § 1681b(b)(2)(A)(i),

particularly because there is no binding authority interpreting this ambiguous provision. *See Just v. Target Corp.*, No. 15-4117, -- F. Supp. 3d --, 2015 WL 2757370, at *2 (D. Minn. May 12, 2016) (dismissing claims because Target's reading of the stand-alone disclosure requirement was not objectively unreasonable in light of ambiguous statutory text and lack of guidance from any appellate court or the FTC); *Goldberg v. Uber Techs. Inc.*, No. 14-14264- RGS, 2015 WL 1530875 (D. Mass. Apr. 6, 2015) (same).[1]

Consistent with *Safeco, Just, Goldberg*, and their progeny, there was no willful violation of § 1681b(b)(2)(A)(i).  The D&A Forms were separate stand-alone forms (requiring their own signature) and did not include release language.  At most, they contain only minimal additional disclosure information regarding state law notices and other minor information about the background check process.  But the statutory language regarding what can be included in a FCRA disclosure is ambiguous, and there is no controlling appellate authority, no binding FTC interpretation, and a split among district courts on whether non-confusing extraneous information can be included in the FCRA disclosure forms.  Because Amazon's conduct was based upon an objectively reasonable interpretation of the ambiguous language in § 1681b(b)(2)(A), Counts I and II fail.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Amazon is an online retailer with fulfillment centers located across the United States that process and ship orders placed online.  (Am. Compl. ¶ 1, ECF No. 79.)

---

[1]     This case is fundamentally different than *Speer v. Whole Food Market Grp., Inc.*, No. 8:14-cv-3035-T-26TBM, 2015 WL 1456981 (M.D. Fla. March 30, 2015), because the electronic D&A Forms that Plaintiffs signed here (Exhibit B) did not contain any release language and were stand-alone documents.

Plaintiffs sought employment as a "TPA1 Fulfillment Associate" at Amazon's fulfillment center in Ruskin, Florida in 2015.  (*Id.* ¶¶ 49-52.)  Amazon obtained a background check report, including criminal background information, from Accurate Background, Inc. ("Accurate") on each of the Plaintiffs in connection with their online employment applications.  (Am. Compl. ¶ 66.)  Plaintiffs Austin and Bonde were hired by Amazon and have continued to work for the company.  (Kellea Williams Decl. ¶ 4, ECF No. 38-3.)  Plaintiff Hargrett alleges that he was not hired.  (Am. Compl. ¶ 88.)

## B.     The D&A Forms

Prior to obtaining the background checks, Amazon notified Plaintiffs of its intent to procure the reports and received Plaintiffs' authorization to do so.  (Am. Compl. ¶¶ 6, 15; Ex. A, ECF No. 79-2.)  Plaintiffs' Amended Complaint attaches a copy of an on-line job application that Plaintiffs' counsel filled out.  (ECF No. 79-1.)  This application was for a ***different*** position than the TPA1 Fulfillment Associate position for which Plaintiffs applied.  (*Id.*)  Nonetheless, Plaintiffs allege that they "completed" this electronic application.  (*Id.* ¶ 6.)[2]

Plaintiffs, however, have now attached a "Second Form" that they submitted and completed in connection with their online employment applications.  (Am. Compl., ¶¶ 7, 15; Ex. B, ECF No. 79-2.)  This "Second Form" consists of two separate stand-alone forms—which were provided at the stage labeled "Background Check Disclosure."  (ECF No. 79-2.)  The first is titled "Background Check Disclosure," which explains that

---

[2]      The "First Form" (Exhibit A) attached to Plaintiffs' Amended Complaint also expressly disclosed that Amazon would conduct a background check—and Plaintiffs do not allege otherwise.  (ECF No. 79-1.)

pursuant to the FCRA, Accurate or another consumer reporting agency acting on behalf of Amazon will process a "background check" on the applicant and furnish it to Amazon. (*Id.* at 2.)  The "Background Check Disclosure" form asks applicants to review and sign the next document (the "Background Check Authorization") if the applicant authorizes a background check to be conducted on behalf of and provided to Amazon.  (*Id.*)

Only after selecting "I Accept" and "Save & Continue" for the "Background Check Disclosure" form document is the applicant directed to the second stand-alone form conspicuously titled "Background Check Authorization."  (*Id.* at 3-5.)  By signing this form, Plaintiffs agreed that they "read and understand the previous disclosure and this authorization form" and they "consent to the preparation and release of consumer and/or investigative consumer reports to the Company."  (*Id.* at 4-5.)  Underneath that form, separated by a line and a heading titled "Additional State Law Notices," are a few paragraphs of additional information regarding rights under the laws of four states.  (*Id.*)

### C.    **Plaintiffs' Claims**

Plaintiffs contend that Amazon violated §1681b(b)(2)(A) because the D&A Forms were part of Plaintiffs' on-line employment application and included "extraneous information."  (Am. Compl. ¶¶ 47, 62-86.)  Plaintiffs do not contend they suffered any actual damages from the D&A Forms, but, instead, seek an award of statutory damages under the FCRA because the alleged violation was purportedly "willful."  (*Id.* ¶¶ 51, 62.)  Plaintiffs seek to assert these claims on behalf of a putative nationwide class.  (*Id.* ¶ 53.)[3]

---

[3]    Plaintiff Hargrett asserts a third individual claim (Count III) for a violation of 15 U.S.C. § 1681b(b)(3)(A).  (Am. Compl. ¶¶ 87-103.)  Consistent with applicable law, Amazon has not answered Count III because it has moved to dismiss the remaining counts.  *See, e.g., Jacques v.*

### III.   **ARGUMENT**

#### A.   **Legal Standard**

Rule 12(b)(1) requires dismissal of a claim if the Court lacks subject matter jurisdiction over it.  Fed. R. Civ. P. 12(b)(1).  For subject matter jurisdiction to exist, Plaintiffs bear the burden of showing that they have Article III standing.  *See Spokeo,* 136 S. Ct. at 1547; *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101 (1998).   It is well-settled that standing is both "***plaintiff-specific* and *claim-specific*.**" *Ford v. Strange*, 580 F. App'x 701, 708 (11th Cir. 2014) (emphasis added) (quoting *Pagán v. Calderón*, 448 F.3d 16 (1st Cir. 2006)).  ***Each Plaintiff***, therefore, must plead facts showing standing to assert ***each claim*** against Amazon.

To do so, each Plaintiff must plead facts plausibly showing that he or she suffered a cognizable "injury in fact" and a "causal connection between th[at] injury and the conduct complained of."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).  While the injury may be "intangible," such as when someone's free exercise rights are violated, the injury must still be "particularized" to the plaintiff and "concrete"—that is, it must "actually exist," be "real," and "not [be] 'abstract.'"  *Spokeo,* 136 S.Ct. at 1548.

---

*First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016) ("majority of courts considering this question have concluded that a party need not file an answer while a partial motion to dismiss is pending").  If the Court prefers that Amazon answer Count III before the Court rules on its motion to dismiss, it will do so.

Pursuant to Rule 12(b)(6), it is well-settled that a claim should be dismissed when the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, Plaintiffs' allegations must transcend the "speculative," "conceivable" and "possible," and instead must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555, 563, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). In making this determination, the Court must disregard "legal conclusions" and "conclusory statements." *Iqbal*, 556 U.S. at 677–79.

Here, applying these principles, Counts I and II should be dismissed because Plaintiffs lack standing to assert them and they fail as a matter of law.

**B.      Plaintiffs Lack Standing To Bring Their § 1681b(b)(2) Claims.**

In *Spokeo*, the Supreme Court made clear that an alleged violation of the FCRA, on its own, is insufficient to show a "concrete" injury. Instead, "Article III standing requires a concrete injury ***even in the context of a statutory violation***." *Spokeo*, 136 S.Ct. at 1549 (emphasis added). While Congress can "identify intangible harms that meet minimum Article III requirements," *id.*, it "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1548.

Applying these principles, the Supreme Court held that a plaintiff cannot satisfy the "demands of Article III by alleging a bare procedural violation" of the FCRA because "[a] violation of one of the FCRA's procedural requirements may result in ***no harm***." *Spokeo,* 136 S.Ct. at 1550 (emphasis added). The Supreme

Court provided two examples.  While the dissemination of an incorrect zip code

violates the FCRA, the Supreme Court acknowledged that it is "difficult to imagine

how the dissemination of an incorrect zip code, without more, could work any

concrete harm."  *Id*.  In addition, the Supreme Court explained that the failure to

provide notice under the FCRA to a user of certain consumer information—a

quintessential procedural issue—may result in no concrete harm.  *Id.*

More recently, the Eleventh Circuit issued its first precedential and binding

decision applying *Spokeo*.  In *Nicklaw*, a plaintiff brought a putative class action

based upon the alleged violation of a New York mortgage satisfaction statute,

contending that after he satisfied his mortgage, the defendant did not file the

certificate of discharge within the statutory time period.  *Nicklaw*, 2016 WL

5845682, at *1-2.  After the district court dismissed the complaint, the plaintiff

appealed.  *Id.* at *2.  Interpreting *Spokeo*, the Eleventh Circuit rejected the

argument that a statutory violation alone is sufficient to confer standing, regardless

of whether the right at issue is "substantive," and made clear that, under *Spokeo*,

"the requirement of concreteness under Article III is not satisfied every time a

statute creates a legal obligation and grants a private of action for its violation."  *Id.*

at *3.  The Eleventh Circuit emphasized that the "relevant question" is whether the

plaintiff suffers "some harm or risk of harm ***from the statutory violation*** to invoke

the jurisdiction of a federal court."  *Id.* (emphasis added).

Applying this standard, the Eleventh Circuit held that the plaintiff lacked

Article III standing to bring his statutory claim because the plaintiff did not allege

any concrete harm from the manner by which the mortgage satisfaction was recorded. *Id.* at *3-4. The plaintiff did not allege that he lost money, his credit was injured, or he suffered any material risk of harm because of the alleged failure to record the mortgage satisfaction in the manner required by the statute at issue. *Id.*

Consistent with *Spokeo* and *Nicklaw*, numerous Circuit Courts of Appeal have rejected claims for lack of standing when the plaintiff relies upon a bare violation of the statute, without alleging facts to show how he or she has been consequentially harmed as a result of the alleged violation.[4] Like the Eleventh Circuit, these courts have expressly rejected a plaintiff's efforts to conflate the alleged violation of a statute (*i.e.*, statutory standing) with an injury-in-fact (*i.e.*, constitutional standing). *See, e.g.*, *Lee*, 2016 WL 4926159, at *2. These are two distinct and independent requirements. Both must be satisfied.

Consistent with these principles, the ever-growing majority of courts have rejected the very FCRA claims that Plaintiffs seek to assert here for lack of standing. In *Nokchan v. Lyft, Inc.*, for instance, the plaintiff argued that he suffered certain informational and privacy injuries as a result of, among other things, the defendant's alleged use of FCRA disclosure forms that were embedded in an employment application and that contained "extraneous information." *Nokchan,*

---

[4]      *See Lee v. Verizon Commc'ns, Inc.*, No. 14-10553, -- F.3d --, 2016 WL 4926159, at *2 (5th Cir. Sept. 15, 2016) (applying rule and holding that "bare allegation of improper defined-benefit-plan management under ERISA, without concomitant allegations that any defined benefits are even potentially at risk, does not meet the dictates of Article III"); *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925 (8th Cir. Sept. 8, 2016) (affirming dismissal of claim for violation of federal statute for lack of standing); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 , 514 (D.C. Cir. July 26, 2016) (same); *see also Zia v. CitiMortgage, Inc.*, No. 15-CV-23026, 2016 WL 5369316, at *5, 7 (S.D. Fla. Sept. 26, 2016) (applying rule).

2016 WL 5815287, at *2.  Judge Spero held that even if plaintiff alleged a technical

violation of § 1681b(b)(2)(A) (and certain other provisions of the FCRA), he did

not meet his burden of alleging facts showing he suffered a concrete injury as a

result of the violation.  *Id.* at *4.  Judge Spero expressly rejected the plaintiff's

arguments that he suffered some form of privacy or informational injury as a result

of the alleged § 1681b(b)(2)(A) violation.  *Id.* at *5-8.

The vast majority of courts have reached the same result.  *See Tyus,* 2016

WL 6108942, at *6 (no standing to pursue § 1681b(b)(2)(A) claims because no

facts showing "extraneous information in the disclosure forms which they signed

undermined their ability to understand the form or the consequences of authorizing

USPS to obtain their criminal background reports"); *Gunther*, 2016 WL 6537975,

at *6 (same); *Hopkins*, 2016 WL 6462095, at *3 (same); *Shoots,* 2016 WL

6090723, at *8 (same); *Landrum*, 2016 WL 6075446, at *4 (same); *Fisher*, 2016

WL 4665899, at *4 (same); *Groshek*, 2016 WL 4203506, at *2 (same); *Smith*, 2016

WL 3182675, at *4 (same); *but see Graham v. Pyramid Healthcare Sols., Inc.,* No.

8:16-CV-1324, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016) (not mentioning

*Nicklaw* and finding standing to bring § 1681b(b)(2)(A) claims based upon alleged

statutory violation alone); *Moody v. Ascenda USA Inc.*, No. 16-CV-60364, 2016

WL 5900216, at *5 (S.D. Fla. Oct. 5, 2016) (same).[5]

Here, Plaintiffs lack standing to bring their § 1681b(b)(2)(A) claims.  Plaintiffs'

Amended Complaint does nothing more than list purported violations of the procedural

---

[5]      A motion for reconsideration of the *Moody* decision is pending.

13

requirements in § 1681b(b)(2)(A) and then allege that they are entitled to statutory damages for those purported violations.  (Am. Compl. ¶¶ 62-86.)  But *Nicklaw* makes clear that a statutory violation, without more, does not satisfy Article III, regardless of whether it is viewed as "procedural" or "substantive,"[6] and Plaintiffs do not allege a ***single fact*** showing any resulting harm or damages from the allegedly improper D&A Forms.  Indeed, Plaintiffs do not allege that they suffered financial injury from the D&A Forms, they were confused by those Forms, or they did not knowingly authorize the background checks to obtain employment with Amazon.  Thus, as a matter of law, Plaintiffs suffered no concrete harm.

Plaintiffs' Amended Complaint purports to manufacture standing through legal conclusions regarding an "informational injury" and an "invasion of privacy."  (Am. Compl. ¶¶ 21-34.)  But these conclusory allegations are insufficient under *Nicklaw*—and the vast majority of decisions that have now been able to address this issue—because they lack supporting facts and the purported harm simply does not ***flow from*** the alleged violation regarding the format of the statutory disclosure.

---

[6]     Ignoring this controlling Eleventh Circuit law, Plaintiffs assert that they have standing because § 1681b(b)(2) purportedly protects a "substantive legal right, the invasion of which creates standing." (Am. Compl. ¶¶ 28.)  But even if this distinction mattered (and it is does not), Congress has made clear that FCRA's requirements are procedural, to ensure that companies "adopt ***reasonable procedures*** for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer . . . ." 15 U.S.C.A. § 1681(b) (emphasis added)).  Likewise, the Eleventh Circuit recognized that the whole purpose of FCRA is for "merchants to adopt ***procedures*** to safeguard consumers' . . . information." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009) (emphasis added).  Just as the obligation of a consumer reporting agency to ensure the maximum possible accuracy of consumer reports is a "procedural" requirement, as the Supreme Court held in *Spokeo*, so is the requirement under § 1681b(b)(2)(A) that an employer's FCRA disclosure consist "solely" of the disclosure and authorization.

First, Plaintiffs have not suffered any "informational injury" because the D&A Forms contained all of the necessary disclosure language mandated by the FCRA. Indeed, Plaintiffs do not and cannot identify a single piece of substantive information mandated by the FCRA that they were not given.  Instead, they challenge the technical **manner** of disclosure—which has nothing to do with being **denied** access to mandatory information that should have been provided.  *See, e.g.*, *Hopkins*, 2016 WL 6462095, at *3; *Landrum,* 2016 WL 6075446, at *4; *Fisher,* 2016 WL 4665899, at *1, 4.

Second, Plaintiffs cannot plausibly allege a privacy violation because they expressly authorized Amazon to obtain the background checks in connection with their employment applications. This is not a case where **no** FCRA disclosures were provided or where Plaintiffs did not agree to have the background reports run.  As such, Amazon did not violate Plaintiffs' privacy by reviewing the information in those background reports.  *See, e.g.*, *Shoots,* 2016 WL 6090723, at *4-6; *Tyus,* 2016 WL 6108942, at *6; *Nokchan,* 2016 WL 5815287, at *5; *Fisher,* 2016 WL 4665899, at *1.

Moreover, as a matter of law, a plaintiff does not suffer any privacy violation—particularly after *Spokeo*—unless her personal information is somehow disclosed to and misused by an unauthorized third party.  *See Braitberg*, 836 F.3d 925, at *4 (plaintiff suffered no concrete privacy injury based upon retention of plaintiff's personal information beyond time allowed by statute, because no allegations that "that any outside party has accessed the data"); *Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) (same); *Khan v. Children's Nat'l Health Sys.*, No. 15-2125, 2016 WL

15

2946165, at *7 (D. Md. May 19, 2016) (same).  Because Plaintiffs authorized Amazon to run the background checks and do not allege their personal information was disclosed to or misused by any third party, they suffered no "privacy" injury.

Plaintiffs also now make the conclusory assertion that they would not have signed the D&A Forms had they known they "were non-FCRA compliant" (Am. Compl. ¶¶ 31), but this is not concrete harm because Plaintiffs read the D&A Forms, were aware of their content *before* they signed them, and gave authorization for the background checks to be run.  Moreover, Plaintiffs fail to assert any facts to support their conclusory assertion—which is utterly implausible.  Plaintiffs had to complete the D&A Forms to obtain employment.  (*Id.* ¶¶ 15, 18, 49-52.)  Plaintiffs allege no facts to show why purportedly "extraneous" language in the D&A Forms would have mattered to them at all, when they needed to consent to a background check to be eligible for employment and there is no allegation that the "extraneous" language prevented them from understanding the clear disclosure that a background check would be procured.  In fact, Plaintiffs Austin and Bonde were hired by Amazon and continue to work there.  (ECF No. 38-3, at ¶ 4.)

Lastly, Plaintiffs rely primarily upon a non-binding, non-precedential, and inapposite decision from the Eleventh Circuit, *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016), that addressed a different statute—the Fair Debt Collection Practices Act ("FDCPA").  The FDCPA requires important disclosures about statutory rights to be made to a debtor, like the right to dispute or get verification of a debt, in connection with debt collection.  *Id.* at *3. The Panel held the plaintiff suffered a concrete injury because she *never* received *any* of those substantive

16

disclosures.  *Id.*  This case is entirely different.   Plaintiffs received the necessary substantive FCRA disclosure that Amazon was going to obtain a background check in connection with their employment applications, yet contend the D&A Forms did not come in the right procedural format.  This is not an Article III injury.  *See, e.g., Hopkins*, 2016 WL 6462095, at *3 (distinguishing *Church* because "the instant case does not allege a failure to receive required information, but rather that plaintiff received the required information in an improper format"); *Fisher,* 2016 WL 4665899, at *4 (same).

Unlike *Church*, the Eleventh Circuit's recent decision in *Nicklaw* is precedential and binding.  It makes clear that a violation of a statute, on its own, is insufficient to confer standing, absent some resulting concrete harm.  *Nicklaw,* 2016 WL 5845682, at *3.  When all the conclusory allegations are stripped away, Plaintiffs' theory of standing, at bottom, is nothing more than that Amazon committed a technical violation of § 1681b(b)(2)(A).  Because Plaintiffs do not and cannot allege any resulting harm from this purported violation, they lack standing.

> **B.**     **Amazon Did Not Violate § 1681(b)(2)(A) Of The FCRA.**

Section 1681b(b)(2)(A) provides that an employer "may not procure a consumer report . . . for employment purposes with respect to any consumer, unless--

> (i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

Plaintiffs concede that Amazon provided them with the D&A Forms in advance of obtaining the background check reports. (Am. Compl. ¶ 15.)   These D&A Forms do not contain any release language.   (ECF No. 79-2.)[7]   Nonetheless, Plaintiffs allege that the D&A Forms were non-compliant for three reasons:  (1) they were part of the employment application; (2) they included broad authorization language; and (3) they included extraneous information, such as state law notices.  (Am. Compl. ¶¶ 12-13.)  As a matter of law, each legal theory fails.

First, although Plaintiffs contend that the D&A Forms violate FCRA because they are part of an employment application (Am. Compl. ¶ 18), courts have held that the "FCRA does not prohibit an employer from providing an FCRA disclosure as part of the employer's job application process," provided they are separate forms. *Newton*, 2015 WL 10435907, at *8.   In *Newton*, for instance, persons applying to work for the defendant company were directed to a web-based platform where the applicant created an account and entered personal information before being directed to two forms.  *Id*. at *1-2.  The first form was a five-page electronic document that provided the applicant with an overview of employment policies.  *Id.*  The applicant entered his or her name and date and then clicked "continue" to proceed to the disclosure and authorization, a one page document that the applicant electronically signed and then clicked "submit."  *Id*.  The

---

[7]       For purposes of whether Amazon has complied with the FCRA, what Plaintiffs describe as the "First Form" (Exhibit A) is irrelevant.  A company need only make **one** disclosure that is compliant with FCRA prior to obtaining a background report.  So long as the "second" Disclosure Forms (Exhibit B) complied with FCRA (and they did), Plaintiffs' § 1681b(b)(2) claims fail.  *See, e.g.*, *Milbourne v. JRK Residential Am.*, LLC, No. 3:12CV861, 2016 WL 1071570, at *7-12 (E.D. Va. Mar. 15, 2016).

Court held that the forms complied with the FCRA because nothing in the FCRA

"prohibit[s] an employer from providing an FCRA disclosure at the same time the

employer provides other employment documents."  *Id.* at *8; *see also Coleman*, 2015 WL

5782352, at *6 ("the Court is not aware of any authority supporting this contention that

merely presenting these documents together violates § 1681b(b)(2)(A)(i)").

 The same analysis applies here.  The online application process is separated into

stages, with the D&A Forms comprising Stage 5—prominently titled as "Background

Check."  (ECF No. 79-2.)  The D&A Forms are self-contained and independent

documents (separately titled "Background Check Disclosure" and "Background Check

Authorization"), Plaintiffs had to "Save & Continue" after separately agreeing to each

document, and they had to electronically review and sign the "Background Check

Authorization" before being allowed to continue with the application process.  (*Id.*)

Because the D&A Forms were separate documents that Plaintiffs had to separately

review and sign, they do not violate § 1681b(b)(2).

 Second, although Plaintiffs allege that the D&A Forms included extraneous non-

release information (pertaining to state law disclosures and an authorization for an agency

acting on behalf of Amazon, including Accurate, to gather the information), this is not a

violation of § 1681b(b)(2)(A).  Plaintiffs base their action against Amazon entirely on the

word "solely" in § 1681b(b)(2)(A)(i).  (Am. Compl. ¶ 15.)  But this term is ambiguous,

when read in context.  The word "solely" does not and cannot mean *exclusively*, because

in the very next provision, the FCRA provides that the stand-alone disclosure document

*also* may contain non-disclosure language—that is, the employee's written authorization

to the procurement of a consumer report. 15 U.S.C. § 1681b(b)(2)(A)(ii) (providing that

"authorization may be made on the document referred to in clause (i)").[8]

Importantly, the FTC has adopted a flexible approach to the term "solely."  In a

joint publication, the FTC stated that an employer "can include some minor additional

information in the [FCRA disclosure] notice (like a brief description of the nature of

consumer reports)," provided that "it doesn't confuse or detract from the notice."  FTC,

*Background Checks:  What Employers Need to Know* 2-3, attached as Ex. A (available at

https://www.ftc.gov/tips-advice/business-center/guidance).[9]  For this reason, "district

courts have reached varying conclusions about the word's import within the context of §

1681b(b)(2)(A)."  *Landrum v. Harris Cty. Emergency Corps.*, 122 F. Supp. 3d 617, 623

(S.D. Tex. 2015) (noting split among district courts on interpretation of language);

*compare Schoebel v. Am. Integrity Ins. Co. of Florida*, No. 8:15-cv-380-T-24 AEP, 2015

WL 3407895, at *9-10 (M. D. Fla. May 27, 2015) (same and dismissing § 1681b(b)(2)(A)

claim for lack of willfulness) *with Speer*, 2015 WL 1456981, at *2-3 (denying motion to

dismiss § 1681b(b)(2)(A) claim based upon release language for lack of willfulness).

Moreover, particularly given its ambiguous usage, the "consists solely of the

disclosure" language in § 1681b(b)(2)(A)(i) cannot be interpreted in a vacuum, but must

be construed in accordance with its purpose and statutory context.  *See, e.g., Abramski v.*

---

[8]       The FCRA does not define the terms "disclosure" or "authorization," and it does not specify what an employer may include in those forms.  If Congress had intended that an employer provide a disclosure with only thirteen or fewer words (such as "you are notified that a consumer report may be obtained for employment purposes"), it could have and would have said so.

[9]       This public record may be considered on a motion to dismiss.  *See, e.g., Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006) (court may take judicial notice of "public records" and "public document[s]").

*United States*, 134 S. Ct. 2259, 2267 (2014) ("relevant words" of statute should be interpreted "not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose'" (citation omitted)).  The purpose of the relevant language is to ensure "that consumers will not be distracted by additional information at the time the disclosure is given." *Schoebel,* 2015 WL 3407895, at *5.  That purpose is clearly served by allowing employers to use a stand-alone FCRA disclosure document, clearly titled "Background Check Disclosure," even where minor information relating to state law disclosures and the background check process is included, without subjecting employers to "no harm" putative class actions seeking to recover class-wide statutory damages.[10]

Lastly, Plaintiffs allege that the D&A Forms were somehow improper because they included "a vast and limitless release of information that applies to third parties' provision of information."  (Am. Compl. ¶ 11).  But this is a red herring.  Plaintiffs do not assert how disclosing the potential source and nature of "consumer reports" —in connection with getting authorization—violates § 1681b(b)(2).  More fundamentally, to the extent Plaintiffs are complaining that the D&A Forms sought authorization for more "consumer report" information than Amazon needed, Plaintiffs do not allege that Amazon actually obtained anything other than a background report.  They do not contend that Amazon procured any of the "limitless" personal information they say the authorization allowed Amazon to obtain.  Therefore, as a matter of law, this theory fails.

---

[10]      Remarkably, Plaintiffs allege that Amazon "has created confusion" about which forms Plaintiffs signed by producing the D&A Forms "nearly an entire year after this litigation began." (Am. Compl. ¶¶ 7, 31.)  Yet, Plaintiffs concede that they received and signed these D&A Forms (*id.* ¶ 15), and Amazon has consistently maintained throughout this litigation that the "First Form" was completed by their attorneys, had no relation to the position for which they applied, and was not signed by Plaintiffs.  (ECF No. 38-3.)

**C.      Even If Amazon Committed A Technical Violation Of The FCRA With Respect To The D&A Forms (And It Did Not), It Was Not Willful As A Matter Of Law.**

Counts I and II seek only statutory damages under the FCRA.  (Am. Compl. ¶¶ 72, 84.)  To obtain statutory damages, however, Plaintiffs must show that Amazon "willfully fail[ed] to comply" with § 1681b(b)(2)(A).  15 U.S.C. § 1681n(a)(1)(A).  Because the FCRA is not a strict liability statute, proving willfulness requires more than a mere technical violation of the statute.  *See, e.g.*, *Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

The Supreme Court has made clear that as a matter of law, this willfulness requirement is not satisfied when a defendant's conduct rests upon a "reading of the statute, albeit erroneous, [that] was ***not objectively unreasonable***."  *Safeco*, 551 U.S. at 69 (emphasis added).  In making this determination, subjective bad faith is not relevant, *id.* at 70 & n.20, and Plaintiffs must allege facts showing ***something more*** than that Amazon's reading of the FCRA was "merely careless."  *Id.*  Thus, when the statutory text is "less-than-pellucid," there is no binding Circuit Court authority, and no "authoritative guidance" has yet come from the FTC, a willfulness claim under the FCRA fails as a matter of law.  *Id.*

Courts across the country have dismissed FCRA claims for willful violations under § 1681n when the defendant's alleged conduct is not inconsistent with an objectively reasonable reading of the statutory language or any binding authority, even if the reading turns out to be incorrect.  *See, e.g., Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 803-04 (7th Cir. 2010); *Schoebel,* 2015 WL 3407895, at *9-10; *Robles v.*

22

*AMPAM Parks Mech., Inc.*, No. EDCV 14-02362-VAP, 2015 WL 1952311, at *5 (C.D. Cal., Apr. 28, 2015) (same); *Syed*, No. CIV. 14-742 WBS, 2014 WL 5426862, at *3-4 (E.D. Cal. Oct. 23, 2014) (same); *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 543 (E.D. Pa. 2012) (same); *King v. MovieTickets.com, Inc.*, 555 F. Supp. 2d 1339, 1342-43 (S.D. Fla. 2008) (same).

Recently, in *Just*, the court dismissed with prejudice the plaintiffs' claims that their employer, Target, violated § 1681b(b)(2)(A) of FCRA because plaintiffs could not show that the violation—which, like here, did ***not*** involve the inclusion of release language—was willful. *Just*, 2016 WL 2757370, at *5. The *Just* plaintiffs argued that the D&A Forms did not comply with the FCRA because they contained "impermissible, extraneous information," such as state-specific information and language indicating that no contract was formed by signing the disclosure. *Id.* at *1-2. Applying *Safeco*, Judge Frank held that the alleged violation was not willful as a matter of law. He reasoned that the "meaning of 'solely' is not entirely certain"; there is ambiguity about "what constitutes a disclosure"; there is no binding appellate or FTC guidance on this issue; and the statute is necessarily ambiguous given the split of authority among district courts on this issue. *Id.* at *4-5; *see also Goldberg*, 2015 WL 1530875, at *2 (no willful violation of § 1681b(b)(2)(A) based upon extraneous language where disclosure was conspicuously titled "Background Check Terms").

Here, Amazon's conduct was not willful as a matter of law because its reading of § 1681b(b)(2)(A) of the FCRA—that a clear and conspicuous FCRA disclosure can also include some non-release information beyond the disclosure itself in a stand-alone

23

document—is not objectively unreasonable.  The statutory language that Plaintiffs exclusively rely upon is ambiguous, because "'solely' in the statute does not actually mean that the disclosure sentence is the only information that can be contained in the disclosure document . . . ." *Schoebel*, 2015 WL 3407895, at *8 (citing 15 U.S.C. § 1681b(b)(2)(A)(ii)).

In addition, as in *Safeco*, "no court of appeals ha[s] spoken on the issue, and no authoritative guidance has yet come from the FTC." *Safeco*, 551 U.S. at 70.  This is controlling.  Amazon cannot be held liable for its statutorily-grounded interpretation of § 1681b(b)(2)(A) when neither the Eleventh Circuit nor the FTC has said that its interpretation is improper.  In fact, as discussed above, district courts have split on the issue of the proper interpretation of the term "solely" in § 1681b(b)(2)(A).  *Schoebel*, 2015 WL 3407895, at *9; *see also Landrum*, 122 F. Supp. 3d at 623, 625-26.

Amazon appreciates that this Court has previously denied a motion to dismiss a § 1681b(b)(2)(A) claim where the complaint alleged that the disclosure form contained a release.  *Speer,* 2015 WL 1456981, at *2-3.  But the D&A Forms that Plaintiffs actually signed (and Amazon relies upon) do *not* have release language.  Moreover, since that decision, a split has emerged in the Middle District of Florida as to whether an employer's interpretation of § 1681b(b)(2)(A) as permitting the inclusion of release language  is "objectively unreasonable," given that the statutory language is not clear, it is susceptible to multiple interpretations, and there is no binding appellate or FTC authority.  *Schoebel*, 2015 WL 3407895, at *8.  This conflict alone show that Amazon's interpretation was *not* objectively unreasonable.

24

In their Amended Complaint, Plaintiffs allege that Amazon's conduct was inconsistent with "FTC guidance" (Am. Compl. ¶¶ 18-19, 66, 68, 80), but there is no such binding FTC authority.  *Schoebel*, 2015 WL 3407895, at *8-9.   There are only a few letters (dating back to 1997 and 1998) from staff counsel at the FTC that even address § 1681b(b)(2)(A), and these letters "are not binding authority on the courts, and they are not even binding on the FTC."  *Schoebel*, 2015 WL 3407895, at *9.   Moreover, these letters have "identified only one type of provision as specifically prohibited from inclusion in the disclosure document – liability waivers"—which the D&A Forms at issue here did not include.  *Just*, 2016 WL 2753730, at *5.  Thus, they do not render Amazon's interpretation unreasonable.  *Safeco,* 551 U.S. at 70 & n. 19 (rejecting reliance on FTC staff letters because they are not binding); *Just*, 2015 WL 2757370 , at *5 (same); *Syed*, 2014 WL 5426862, at *3–4 (same).

Put simply, Amazon cannot be held liable for a "willful" violation of the FCRA where the stand-alone D&A Forms signed by Plaintiffs did not contain release language.  To the extent the inclusion of "extraneous" information was even a technical violation of § 1681b(b)(2), it was not "willful" as a matter of law because the statutory language is not clear, the FTC has not provided any authoritative guidance on this issue and its informal guidance permits certain additional information to be included, and no controlling appellate decision exists.  Thus, the Court should dismiss Counts I and II.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss Counts I and II of Plaintiffs' Amended Complaint.

Dated:  November 7, 2016                    /s/ Brian M. Ercole
                                            Brian M. Ercole
                                            Florida Bar No. 0102189
                                            Morgan, Lewis & Bockius LLP
                                            5300 Southeast Financial Center
                                            200 South Biscayne Blvd.
                                            Miami, FL 33131
                                            Telephone: 305.415.3416
                                            Facsimile:  305.415.3001
                                            brian.ercole@morganlewis.com

                                            Gregory T. Parks (admitted *pro hac vice*)
                                            Morgan, Lewis & Bockius LLP
                                            1701 Market Street
                                            Philadelphia, PA 19103-2921
                                            Telephone:  215.963.5170
                                            Facsimile: 215.963-5001
                                            gregory.parks@morganlewis.com

                                            Paul C. Evans *(*admitted *pro hac vice*)
                                            Morgan, Lewis & Bockius LLP
                                            1701 Market Street
                                            Philadelphia, PA  19103-2921
                                            Telephone:  215.963.5431
                                            Facsimile: 215.963-5001
                                            paul.evans@morganlewis.com

                                            Jacqueline C. Gorbey (admitted *pro hac vice*)
                                            Morgan, Lewis & Bockius LLP
                                            1701 Market Street
                                            Philadelphia, PA  19103-2921
                                            Telephone:  215.963.5486
                                            Facsimile: 215.963-5001
                                            jacqueline.gorbey@morganlewis.com

                                            *Attorneys for Defendant Amazon.com DEDC
                                            LLC*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2016, I caused a true and correct copy of Defendant's Motion to Dismiss Counts I and II of Plaintiffs' Amended Consolidated Class Action Complaint And Memorandum Of Law to be served via the Court's ECF system on all counsel of record.

<u>*/s/ Brian M. Ercole*</u>
Brian M. Ercole