UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONOVAN HARGRETT,

    Plaintiff,

v.                                                                                      CASE NO.  8:15-cv-2456-T-26EAJ

AMAZON.com DEDC LLC,

    Defendant.

AND

MICHAEL AUSTIN and DEOLINDA
S.M. BONDE

*on behalf of himself and on themselves
and of all others similarly situated*,

    Plaintiffs,

v.

AMAZON.com DEDC LLC,

    Defendant.
_____/

**O R D E R**

    **THIS CAUSE** comes before the Court on Defendant's Motion to Dismiss Counts I and II of Plaintiffs' Amended Consolidated Class Action Complaint (Dkt. 80),

Plaintiffs' Response in Opposition (Dkt. 86), and Defendant's Reply (Dkt. 89). The parties have also submitted supplemental authorities. (Dkts. 90-95.)

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Amazon.com DEDC, LLC moves to dismiss the claims brought by Plaintiffs Donovan Hargrett, Michael Austin, and Deolinda Bonde ("Plaintiffs") for alleged violations of 15 U.S.C. § 1681b(b)(2)(A)(I)-(ii) of the Fair Credit Reporting Act ("the FCRA") (see Amended Consolidated Class Action Complaint ("Am. Comp."), Dkt. 79, Counts I & II), arguing that Plaintiffs lack standing to assert their claims and that the claims fail as a matter of law. Having carefully considered the parties' submissions and conducted an independent review of the case law, the Court must find that the Motion is due to be denied.

**Factual Background**

Defendant is an online retailer with fulfillment centers located across the United States that process and ship orders placed online. Plaintiffs sought employment as a "TPA1 Fulfillment Associate" at Amazon's fulfillment center in Ruskin, Florida in 2015. (Dkt. 79, ¶¶ 49-52.) Defendant obtained a background check report, including criminal background information, from Accurate Background, Inc. ("Accurate") on each of the Plaintiffs in connection with their online employment applications. (Id. at ¶ 66.) Plaintiffs Austin and Bonde were hired by Defendant and have continued to work for the company. (Kellea Williams Declaration, Dkt. 38-3, ¶ 4.) Plaintiff Hargrett alleges that he was not

hired. (Dkt. 79, ¶ 88.) Prior to obtaining the background checks, Defendant notified Plaintiffs of its intent to procure the reports and received Plaintiffs' authorization to do so. (Id. at ¶¶ 6, 15; Ex. A.) Plaintiffs provided the Court with a copy of an on-line job application that Plaintiffs' filled out. (Id. at Ex. A.) This application was evidently for a different position than the one for which Plaintiffs applied. (Id.) Plaintiffs allege that they completed this electronic application. (Am. Compl., ¶ 6.) The form contains two waivers purporting to release Defendant of any liability. (Id. at Ex. A.)

Plaintiffs have also presented the Court with a "Second Form," however, that they submitted and completed in connection with their online employment applications. (Id. at ¶¶ 7, 15; Ex. B.) This form actually consists of two separate forms which were provided at the stage labeled "Background Check Disclosure." (Id. at Ex. B.) The first is titled "Background Check Disclosure," which explains that pursuant to the FCRA, Accurate or another consumer reporting agency acting on behalf of Defendant will process a "background check" on the applicant and furnish it to Defendant. (Id. at 2.) The "Background Check Disclosure" form asks applicants to review and sign the next document (the "Background Check Authorization") if the applicant authorizes a background check to be conducted on behalf of and provided to Defendant. (Id.) Only after selecting "I Accept" and "Save & Continue" for the "Background Check Disclosure" form document is the applicant directed to the form entitled "Background Check Authorization." (Id. at 3-5.) The form then includes a paragraph stating that:

> I authorize without reservation any party or agency acting on the behalf of the Company to furnish the above-mentioned information to the Company from the following private and public sector entities: past and present employers; learning institutions, including colleges and universities; law enforcement agencies; federal, state and local courts; the military; credit bureaus; and, motor vehicle records agencies.

(Id. at 4.) By signing the form, Plaintiffs agreed that they "read and understand the previous disclosure and this authorization form" and they "consent to the preparation and release of consumer and/or investigative consumer reports to the Company." (Id. at 4-5.) Then, underneath that form, separated by a line and a heading titled "Additional State Law Notices," are paragraphs of additional information regarding rights under the laws of four states. (Id.)

## Plaintiff's Claims and Procedural History

Plaintiffs bring this action against Defendant under the FCRA, alleging that Defendant violated §1681b(b)(2)(A) because the above-described forms were part of Plaintiffs' on-line employment application and included "extraneous information." (Dkt. 79, ¶¶ 47, 62-86.) Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure* that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized the procurement of the consumer report in writing (which authorization may be made on the document referred to in clause (i)).

15 U.S.C. §§ 1681b(b)(2)(A)(I)-(ii) (emphasis added).

Plaintiffs assert that Defendant failed to satisfy these disclosure and authorization requirements inasmuch as Defendant does not have a stand-alone FCRA disclosure or authorization form. They specifically allege that Defendant's FCRA disclosure violates the FCRA because the disclosure may not be part of an employment application, yet Defendant's "First FCRA disclosure Form" was included within and as part of Plaintiffs' online job application. Also, Defendant's purported FCRA disclosure contains a liability release and extraneous information, including references to "at will" employment, and a statement by Defendant requiring Plaintiffs and the putative class members to acknowledge that nothing contained within the disclosure created a "contract."

Plaintiffs do not contend that they suffered any actual damages from the forms, but instead seek an award of statutory damages under the FCRA because the alleged violation was "willful." (Dkt. 79, ¶¶ 51, 62.) Plaintiffs seek to assert these claims on behalf of a putative nationwide class. (Id. at ¶ 53.) Plaintiff Hargrett asserts a third individual claim (Count III) for a violation of 15 U.S.C. § 1681b(b)(3)(A), which is not at issue in the instant motion. (Id. at ¶¶ 87-103.)

Plaintiff Hargrett filed the original complaint in state court on September 11, 2015. Then, on October 16, 2015, Defendant removed the case to this Court. Defendant argued as follows: "this is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a), in that it presents a federal question." (Dkt. 1

¶ 4.) On October 29, 2015, Defendant moved to consolidate this case to the Northern District of Illinois, where another FCRA case against Defendant was pending.(Dkt. 10.) That motion was denied. (Dkt. 15.) Plaintiffs Austin and Bonde filed a separate lawsuit against Defendant, which was then transferred to and consolidated with this case in November of 2015. (Dkts. 32, 34.) In the interim, on November 12, 2015, Plaintiffs filed a motion seeking class certification under Rule 23. (Dkt. 27.) Defendant filed its Answer and Affirmative Defenses on November 17, 2015. (Dkt. 31.) Then, on December 21, 2015, Defendant filed a Motion to Dismiss for Lack of Standing under Rule 12(b)(1) or, in the alternative, asked this Court to stay these proceedings pending the outcome of the Supreme Court's decision in Spokeo, Inc. v. Robins, ___ U.S. ___, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), as revised, (May 24, 2016), which was due to be issued soon thereafter. (Dkt. 38.) Defendant also asked the Court to stay this case pending the outcome of Campbell-Ewald Co. v. Gomez , ___ U.S. ___, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016), which dealt with mootness and Rule 68 offers, issues that are irrelevant to the instant motion to dismiss.

On December 30, 2016, the Court granted Defendant's Motion to Stay. (Dkt. 45.) For approximately five months, these proceedings were stayed and after the decisions in Spokeo and Gomez issued, this Court held a status conference on June 9, 2016. At that time, the Court specifically asked both sides about Spokeo and its impact (or lack thereof) on this case. Defendant's prior counsel stated that Defendant would not be raising Spokeo

at that time. (Dkt. 77-1 at 8–9). Plaintiffs assert that as a result of these statements by Defendant's counsel, they did not seek leave to amend their operative Consolidated Complaint, but reserved their right to do so should Spokeo later become an issue.

Following the status conference, Defendant filed its answer and affirmative defenses on June 20, 2016. (Dkt. 56.) A case management and scheduling order was entered on July 12, 2016, and the parties began exchanging class-wide discovery, serving third-party subpoenas, and coordinating depositions. (Dkt. 62.) After the denial of a motion for judgment on the pleadings brought by newly-hired defense counsel (Dkt. 78), the Court then allowed Plaintiffs to file an Amended Consolidated Class Action Complaint (Dkt. 79), which is now the operative Complaint in this case. On November 7, 2016, Defendant filed the instant Motion to Dismiss counts I and II. (Dkt. 80.)

## **Standards for Dismissal**

Rule 12(b)(1) requires dismissal of a claim if the Court lacks subject matter jurisdiction over it. For subject matter jurisdiction to exist, Plaintiffs bear the burden of showing that they have Article III standing. Spokeo, 136 S. Ct. at 1547. It is well-settled that standing is both "plaintiff-specific and claim specific." Ford v. Strange, 580 F. App'x 701, 708 (11th Cir. 2014) (quoting Pagán v. Calderón, 448 F.3d 16 (1st Cir. 2006)). Each Plaintiff, therefore, must plead facts showing standing to assert each claim against Defendant. To do so, each Plaintiff must plead facts plausibly showing that he or she suffered a cognizable "injury in fact" and a "causal connection between th[at] injury and

the conduct complained of." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). To establish an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560). While the injury may be "intangible," such as when someone's free exercise rights are violated, the injury must still be "particularized" to the plaintiff and "concrete"-- that is, it must "actually exist," be "real," and "not [be] 'abstract.'" Id. at 1548.

In determining whether to grant a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court shall not dismiss a complaint if it includes "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In Twombly, the Supreme Court determined that the plaintiffs "ha[d] not nudged their claims across the line from conceivable to plausible[.]"). Id. "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Furthermore, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, (citations omitted), a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1964-65. To survive a motion to dismiss under <u>Twombly</u>, a complaint's factual allegations, if assumed to be true, "must be enough to raise the right to relief above the speculative level." 550 U.S. at 555, 127 S.Ct. at 1965.

When measured against these standards, it is clear to the Court that counts I and II of the Amended Consolidated Class Action Complaint are sufficient to overcome dismissal at this juncture of the case.

## Discussion

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury-in-fact. This Article III requirement has two components: the injury must be both (1) particularized and (2) concrete. Defendant argues that Plaintiffs' claims fail because: (1) they do not and cannot allege a single factual allegation showing they suffered any concrete harm because of the manner by which the FCRA disclosure and authorization language (which Plaintiffs agreed to) was presented to them, and, therefore, they lack standing under <u>Spokeo</u>; (2) the subject forms did not violate the FCRA; and (3) even if there was a technical violation, it was based upon an objectively reasonable reading of § 1681b(b)(2)(A) and, thus, not "willful" as a matter of law.

Defendant does not contest that the injuries suffered by Plaintiffs are sufficiently "particularized." Nor does it contend that Plaintiffs fail to satisfy the other tests required for standing. Instead, Defendant argues that, under <u>Spokeo</u>, Plaintiffs have not suffered a

"concrete" injury resulting from Defendant's alleged FCRA violations. Defendant would have this Court believe that <u>Spokeo</u> constitutes a substantial change in the law in this area; however; <u>Spokeo</u> merely established that to have standing, a plaintiff need only show an injury that is both particularized and concrete. 136 S. Ct. at 1549. In doing so, the Court reaffirmed well-established Article III-standing principles---that "intangible injuries can nevertheless be concrete," just as can injuries based on a "risk of harm." <u>Id.</u> The Supreme Court further explained that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." <u>Id.</u> The Court recognizes the split in persuasive authority as to this issue, however, it is convinced that Article III standing is sufficiently established in this case inasmuch as Plaintiffs have at least three kinds of harm: invasion of privacy, informational harm, and risk of harm. The invasion of Plaintiffs' right to receive a stand-alone disclosure document required by the FCRA is not hypothetical or uncertain.

     Eleventh Circuit case law further bolsters the Court's conclusion that standing exists in this case. The court looked carefully at <u>Spokeo</u> and Article III standing and, after a careful and thoughtful analysis of <u>Spokeo</u>, decided in multiple cases that an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which, creates standing. <u>See</u> <u>Church v. Accretive Health, Inc.</u>, 654 F. App'x 990, 994 (11th Cir. 2016) (holding that not receiving information to which one is statutorily entitled is a "concrete" injury); <u>Nicklaw v. CitiMortgage, Inc.</u>, 839 F. 3d 998, 1002 (11th Cir. 2016)

(noting that a "plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury"); Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015) (quoting various decisions of the Supreme Court for the following proposition: "Congress may create a statutory right or entitlement[,] the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute. In other words, "[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'").

And, in a recent decision in Graham v. Pyramid Healthcare Solutions, Inc., 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016), Judge James S. Moody, Jr. of this Court reached the same conclusion in denying a motion to dismiss for lack of standing that was nearly identical to the one at bar. Specifically, Judge Moody opined:

> Here, Plaintiff alleges a concrete and particularized injury in fact: Plaintiff has statutorily-created rights under the FCRA to receive a clear and conspicuous standalone disclosure…. In sum, Plaintiff's standing was established when Plaintiff alleged Defendant procured a consumer report on her background without following the FCRA's disclosure and authorization requirements. Defendant's effort to create a new enhanced standing requirement is misguided and contrary to the holding in Spokeo.

As in Graham, Counts I and II of Plaintiffs' Amended Consolidated Complaint allege, in relevant part, that the disclosure Plaintiffs executed to authorize Defendant to obtain a background report as part of the employment process failed to comply with 15 U.S.C. § 1681b(b)(2)(A)'s requirement of a stand-alone disclosure. The Graham decision came out

-11-

twenty days after Nicklaw was decided and, thus, Defendant's arguments that the Graham court was unable to or did not have the ability to apply Nicklaw are not accurate.

Further, in a decision issued last month in the Eastern District of Virginia, the court ruled that Spokeo refined the injury-in-fact analysis for standing. Clark v. Trans Union, LLC, 2016 WL 7197391, *8 (E.D. Va. Dec. 9, 2016). The Plaintiff, in Clark, sought statutory damages for a similar "informational injury" violation of § 1681g(a)(2) and the court found that her injury was both particularized and concrete, thereby satisfying the injury-in-fact analysis. Id. at *27-28. And, just over a week ago, a judge of the Southern District of Florida, in denying a motion for reconsideration of its order denying dismissal, found that a violation of rights to information and privacy, which were congressionally elevated by the FCRA, through use of a disclosure form that contains an extraneous liability release, is not simply "a bare procedural violation, divorced from any concrete harm." Ashley Moody v. Ascenda USA Inc., d/b/a 24-7 Intouch, 2016 WL 5900216, at *5 (S.D. Fla. Jan. 20, 2017) (citing Spokeo, 136 S. Ct. at 1549). The court added that it is the type of violation for which plaintiffs need not allege any harm beyond that which Congress identified. Id. (citing Rodriguez v. El Toro Med. Inv'r Ltd. P'ship, 2016 WL 6804394, at *5 (C.D. Cal. Nov. 16, 2016); Graham, 2016 WL 6248309, at *2; Thomas v. FTS USA, LLC, 2016 WL 3653878, at *11 (E.D. Va. June 30, 2016.) On the same day, a panel of the Ninth Circuit Court of Appeals similarly ruled that a prospective employer violates 15 U.S.C. § 1681b(b)(2)(A) when it procures a job applicant's

consumer report after including a liability waiver in the same document as a statutorily mandated disclosure. Syed v. M-I, LLC, ___ F.3d ___, 2017 WL 242559 at *4-5 (9th Cir. Jan. 20, 2017.)

As Plaintiffs assert, beyond the liability releases, the subject forms include no less than five-pages of "eye-straining, tiny typeface writing" with the following additional extraneous information:

> a) A statement that Accurate Background, Inc., will perform the background check but, then, confusingly, applicants must agree that "any other consumer reporting agency acting on behalf of the company may also conduct the report;"
>
> b) At least five different state law notices informing consumers of their additional rights under California, Maine, Massachusetts, New York, and Washington (none of which impact the Plaintiffs here);
>
> c) A statement indicating that if applicants "revoke" their consent to allow Defendant to procure a background check on them through Accurate or some other unnamed consumer reporting agency, that such revocation may "affect my continued employment and/or eligibility for transfer or promotion." Or, put simply, either consent to the terms or the applicant would not be hired.

As explained by the court in Jones v. Halstead Mgmt. Co., LLC, 81 F.Supp. 3d 324, 333 (S.D. N.Y. 2015), "all of those extraneous additions to the form stretched what should be a simple disclosure form to [five] full pages of eye-straining tiny typeface writing." Inclusion of the state law disclosures within the federal FCRA disclosure form simply does not satisfy the statute's "standalone" or "solely" requirement. See, e.g., Robrinzine v. Big Lots Stores, Inc., 156 F. Supp. 3d 920, 926-27 (N.D.Ill. 2016) (finding

a § 1681b(b)(2)(A)(i) violation where, like here, a consumer disclosure form included state-specific provisions unrelated to the plaintiff's potential employment); Martin v. Fair Collections & Outsourcing, Inc., 2015 WL 4064970, at *1-2 (D. Md. June 30, 2015) (same); Case v. Hertz Corp., 2016 WL 1169197, at *4-5 (N.D. Cal. Feb. 26, 2016) (same). Neither of the two forms at issue here constitute a document consisting solely of a disclosure that a background check will be procured for employment purposes. Because these were the only two forms Defendant provided to Plaintiffs prior to procuring a report on them, the Court must agree with Plaintiffs that counts I and II of the operative complaint plausibly allege that Defendant violated 15 U.S.C. § 1681b(b)(2)(A)(i) and (ii).

Plaintiffs also sufficiently allege that the § 1681b(b)(2) violation was willful in order to overcome dismissal at this stage of the proceedings. Willfulness is typically a question of fact for the jury. See Miller v. Johnson & Johnson, 80 F.Supp. 3d 1284, 1296 (M.D. Fla. 2015) ("[W]hether an employer acted willfully or negligently under the FCRA is understood to be a question of fact for the jury."). Nevertheless, Plaintiff alleges as to willfulness:

> Defendant knew it was required to provide a stand-alone form (separate from the employment application) prior to obtaining and then utilizing a consumer report on Plaintiffs and the Putative Class. In fact, Defendant hired Accurate Background, Inc., a well-respected national consumer reporting agency, to procure its consumer reports on Plaintiffs and the Putative Class. Importantly, Accurate Background, Inc. made readily available to Defendant the FCRA's requirements, including as to stand-alone documents. In fact, the Accurate Background, Inc. website . . . provides a model FCRA disclosure and a plethora of FCRA-related materials and guidance for its customers, "white papers" discussing the

> FCRA and FCRA compliance, legislative updates, including links to the FTC website, and model forms that do not have liability waivers. Accurate Background, Inc. also provided Defendant and all of its clients with access to newsletter and "case studies" with updates on the FCRA. Thus, Defendant was clearly aware of its obligations under the FCRA, including with respect to keeping itself informed of the FCRA's obligations and as to its potential exposure for willful violations.

(Dkt. 79, ¶ 65.)

A defendant acts "willfully" if the conduct was intentional or reckless--that is, conduct "entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57, 68 (2007) This Court previously found that allegations similar to the instant Plaintiffs' were sufficient in Speer v. Whole Food Mkt. Grp., Inc., 2015 WL 1456981, at *3-4 (M.D. Fla. Mar. 30, 2015) and there is no basis for finding any differently now. See also Syed, 2017 WL 242559, at *7-9 (holding that in light of the clear statutory language that a disclosure document consists solely of the disclosure, a prospective employer's violation of § 1681b(b)(2)(A) is "willful" when the employer includes terms in addition to the disclosure, such as the liability waiver her, before procuring a consumer report or causing one to be procured.".) In Case, the court found, in reliance on Safeco, that allegations nearly identical to Plaintiffs' in the instant Amended Consolidated Class Action Complaint, when taken as true, were sufficient to establish that the defendant "voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 2016 WL 1169197, at *5.

Furthermore, as Plaintiffs allege, Defendant was already "involved in high stakes FCRA litigation, putative classes involving thousands of employees across the nation, and also happen to both involve some of the country's top FCRA defenses lawyers working for Defendant. Thus, it would seem illogical for Defendant to argue that it was unaware of its obligations under the FCRA as it has been involved in high-stakes FCRA class litigation for nearly an entire year, litigation that started long before the filing of this lawsuit." (Dkt. 79, ¶ 70.)

In light of all the foregoing, the Court concludes that Plaintiffs have standing to raise their claims and that their claims are sufficient as a matter of law.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

Defendant's Motion to Dismiss Counts I and II of Plaintiff's Amended Consolidated Class Action Complaint (Dkt. 80) is **DENIED**. Defendant shall file its answer to the complaint with 10 days of this Order.

**DONE AND ORDERED** at Tampa, Florida, on January 30, 2017

        s/*Richard A. Lazzara*
        **RICHARD A. LAZZARA**
        **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record