**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| DONOVAN HARGRETT, | |
| Plaintiff, | CASE NO. 8:15-cv-2456-T-26EAJ |
| v. | |
| AMAZON.com DEDC LLC, | |
| Defendant. | |
| And | |
| MICHAEL AUSTIN and DEOLINDA S.M. BONDE, *on behalf of themselves and of all others similarly situated,* | |
| Plaintiffs, | |
| v. | CASE NO. 8:15-cv-2588-T-26JSS |
| Amazon.com DEDC LLC, | |
| Defendant. | |

**DEFENDANT AMAZON.COM DEDC LLC'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' RENEWED**
**MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL BACKGROUND .................................................................................. 4

    A.    Amazon Runs Background Checks On Its Many Employees, As Permitted By The FCRA ................................................................................. 4

    B.    Amazon Uses A Stand-Alone Disclosure Form ............................................... 5

    C.    Applicants Vary As To Whether They Have Criminal Backgrounds.............. 6

    D.    Applicants Vary As To Whether They Read The Disclosure Form ................ 7

    E.    Putative Class Members Understood Amazon Would Run A Background Check, Agreed To It, And Were Not Harmed By The Disclosure Form ..................................................................................................7

    F.    Remarkably, After Years Of Litigation, Bonde Dismissed Her Claim With Prejudice And The Remaining Plaintiffs Testified That Their FCRA Claims Are Not Based On The Disclosure Form ................................. 8

    G.    Hargrett And Austin Have Different Motivations For Bringing Their Claims, Assert Different Claims, And Seek Different Relief ......................... 9

        1.    Hargrett ............................................................................................. 9

        2.    Austin ............................................................................................. 11

    H.    Ignoring Their Own Testimony, Plaintiffs Seek To Certify A Nationwide Class Based On The Disclosure Form........................................ 11

III.  LEGAL ARGUMENT ......................................................................................... 11

    A.    No Class Can Be Certified Because The Named Plaintiffs Lack Standing ....................................................................................................... 12

    B.    Plaintiffs Are Not Adequate Class Representatives....................................... 14

    C.    Plaintiffs' Claims Are Not Typical Of The Putative Class............................ 16

    D.    Plaintiffs Do Not And Cannot Identify Any Common Evidence That Will Resolve All Claims And Individualized Issues Predominate ................ 17

        1.    Individualized Issues Predominate As To Standing .......................... 17

        2.    Individualized Issues Predominate As To Which FCRA Form Each Putative Class Member Seeks To Challenge ........................... 20

        3.    Individualized Issues Predominate As To Willfulness ...................... 21

        4.    Individualized Issues Predominate As To The Relief Sought .......... 22

        5.    Individualized Issues Predominate As To Damages......................... 23

    E.    A Class Action Is Not Superior And Plaintiffs Offer No Trial Plan ............ 24

# TABLE OF CONTENTS
(continued)

**Page**

IV.    CONCLUSION............................................................................................................. 25

I.      **INTRODUCTION**

Plaintiffs' renewed motion for class certification does nothing to remedy the defects in their original motion.  In fact, discovery taken since that time has continued to confirm that the class Plaintiffs seek to certify does not meet the requirements of Rule 23.  For this and the other reasons more fully set forth below, the Court should deny Plaintiffs' renewed motion.

Plaintiffs Donovan Hargrett ("Hargrett"), Michael Austin ("Austin"), and Deolinda Bonde ("Bonde") applied online to work at Amazon's fulfillment center in Ruskin, Florida through its online job recruiting platform, which is called "Salesforce."  To obtain employment and start working, they had to affirm that they reviewed and understood the information Amazon presented on the screen in front of them.  Each Plaintiff was shown a single document, conspicuously labeled "Background Check Disclosure" ("Disclosure Form"), which explained on a single screen that Amazon would procure a background check report on them in connection with their employment application.  After clicking "I Accept" and "Save and Continue" on the Disclosure Form screen, they viewed and electronically signed a separate document, titled "Background Check Authorization" ("Authorization Form"), which gave them the option to consent to the background check.  Austin and Bonde were hired; Hargrett was not, due to his many recent felony convictions.[1]

Hargrett, Austin, and Bonde originally brought this action against Amazon, alleging that Amazon violated § 1681b(b)(2) of the Fair Credit Reporting Act ("FCRA") because the

---

[1]      Plaintiffs' class certification motion asserts that Exhibit B to their Complaint (Dkt. No. 79-2) is the Disclosure Form.  But Exhibit B attaches both the Disclosure Form and the Authorization Form.  And it does not reflect how either Form was presented to Plaintiffs and other applicants because the formatting is incorrect and it spans several pages.  Discovery has shown that the Disclosure Form appeared on a single screen, apart from the Authorization Form.  Exhibit D-2 herein is the single-screen Disclosure Form.  (Ex. D, at ¶¶ 4-5, 8.)

form used to disclose that it is running a background check did not consist "solely" of the disclosure and that they suffered harm from this form. Based on this theory, Plaintiffs ask this Court to certify a class of Amazon applicants who received the Disclosure Form and for whom a background check was run by Amazon's vendor, Accurate Background. But Plaintiffs can no longer rely upon their lawyer-crafted allegations to meet their class certification burden, and the actual factual record shows that Plaintiffs' claims are overrun by individualized issues and suffer from many adequacy, typicality, and superiority problems.

Contrary to their allegations, Hargrett and Austin testified that they could not even recall whether they saw the Disclosure Form when they applied and, once shown the Disclosure Form, they could not identify anything wrong with it; let alone find it confusing. They further claimed that they were basing their claims on a ***completely separate form*** (pulled from the internet by their attorneys) that was ***not available*** to Salesforce applicants in the purported class, and were doing so based on the exclusive theory that it contains a release of liability (which the Disclosure Form does not have). To make matters worse, Bonde testified that she had never heard of the FCRA, was not suing based on the Disclosure Form, and only wanted to understand why Amazon fired her. Because she had no grounds to pursue her meritless FCRA claim, Bonde dismissed that claim ***with prejudice***. Similarly, numerous other putative class members have testified that they suffered no harm from the Disclosure Form and have no interest in pursuing any claims against Amazon.

As a result of this controlling testimony and the dismissal of Bonde's claim with prejudice, Plaintiffs cannot satisfy their heavy evidentiary burden at class certification for numerous reasons. ***First***, under controlling Eleventh Circuit law, although the Court

addressed Article III standing (and other issues) at the motion to dismiss stage ***based upon Plaintiffs' allegations***, the Court must now address this issue based upon the record evidence. As Amazon's pending summary judgment motion demonstrates, Plaintiffs lack standing because they understood from the Disclosure Form that Amazon would obtain a background check report on them, they agreed to it, and they never suffered any harm as a result of any language in the Disclosure Form.

*Second*, even if Plaintiffs had standing, they are inadequate class representatives and their claims are not typical. Plaintiffs seek to represent a putative class of applicants who acknowledged yet allegedly challenge the Disclosure Form, but, according to Plaintiffs' own testimony, their claims are based upon an ***entirely different form*** (not available to Salesforce applicants) and an ***entirely different theory*** (inclusion of release language). Plaintiffs also want markedly different types of relief based upon their unique motivations for bringing this suit. Hargett even asserts a separate individual claim based on a ***different*** FCRA violation.

*Third*, Plaintiffs cannot satisfy the commonality and predominance requirements. Plaintiffs' own testimony shows that proving their claims will not prove those of others. For each putative class member, it will be necessary to conduct individualized inquiries relating to standing, which form is being challenged, when the background check was run, the legal landscape at that time, and the relief sought. And, at a minimum, Amazon has the right to introduce individualized evidence on each of these points, such as testimony from the many putative class members who already have declared that they understood, agreed to, and were not harmed by the Disclosure Form. The individualized mini-trials needed to resolve these issues defeat certification.

Tellingly, Plaintiffs fail to offer any common testimony capable of proving all claims on a class-wide basis, much less provide any trial plan as to how they could address these numerous individualized issues through common evidence at trial.  Instead, Plaintiffs wrongly and repeatedly argue that a class can be certified because the Court already resolved the validity of the Disclosure Form when it ruled on Amazon's motion to dismiss.  It did no such thing.  The Court was bound by Plaintiffs' inaccurate allegations at that time and never evaluated the singular Disclosure Form that Plaintiffs *actually viewed*.  The Court certainly never had the benefit of Plaintiffs' deposition testimony—which makes clear that Plaintiffs do not even seek to challenge the Disclosure Form that forms the basis for their class claims.

*Lastly*, a class action is not a superior way of proceeding as a result of the problems identified above.  Given the availability of attorneys' fees and punitive damages, each class member has an interest in filing and controlling her own action—just like Hargrett has done with respect to his separate § 1681b(b)(3) claim, and Bonde has done by dismissing her claim with prejudice.  Moreover, proceeding as a class action would potentially impose massive liability on Amazon that is grossly disproportionate to any harm.  If any putative class member feels that she has been harmed, she can file suit separately and seek whatever relief she wants. There is simply no need for a class action under these circumstances.

## II.     FACTUAL BACKGROUND

### A.     Amazon Runs Background Checks On Its Many Employees, As Permitted By The FCRA.

Amazon is an online retailer with fulfillment centers located across the United States that process and ship orders placed online.  (Am. Compl., ECF No. 79, ¶ 1.)  Amazon runs background checks on its fulfillment center applicants to identify those who are not suitable

4

for the position and to ensure workplace safety.  (Declaration of L. Ashfield (formerly Cavender) ("Ashfield Decl."), attached as Ex. D, at ¶ 3.)

The FCRA allows employers to conduct background checks for employment purposes.  When they do, the FCRA requires a disclosure that "a consumer report may be obtained for employment purposes" and an authorization from the consumer before procuring that report.  15 U.S.C. § 1681b(b)(2).  To help applicants understand that a consumer report will be procured as part of the application process, the FCRA requires that the disclosure be provided "in a document that consists solely of the disclosure."  *Id.*  The FCRA does not define "solely" or explain what language can be included in the disclosure.[2]

### B.    Amazon Uses A Stand-Alone Disclosure Form.

Individuals who want to apply for an Amazon fulfillment center position do so online through an Amazon-branded Salesforce technology platform ("Salesforce").  (A. Malatesta Dep., attached as Ex. B, at 30:22-31:15, 33:19-34:2.)  Through Salesforce, applicants must complete and submit an electronic employment application and must view and submit additional forms. (*Id.* at 47:11-18; K. Williams Dep., attached as Ex. C, at 55:18-58:6.)  One of the additional forms is the Disclosure Form.  Applicants who applied for fulfillment center jobs through Salesforce were presented with the single-page Disclosure Form.  (*See* Ashfield Decl., Ex. D, at ¶¶ 4-6; *see also* Disclosure Form, Ex. D-2.)  The Disclosure Form explains, among other things, that Amazon "may procure a consumer report in connection . . . with the

---

[2]       Both the FCRA and Federal Trade Commission ("FTC") instruct that an employer may include at least some information beyond just the disclosure in the disclosure form.  The statute, for instance, expressly permits authorization language.  15 U.S.C. § 1681b(b)(2)(A)(ii); *Staff Opinion Letter to Hawkey*, 1997 WL 33791224, at *1 n.3 (F.T.C. Dec. 18, 1997).  And the FTC permits the inclusion of "some additional information that is not confusing.  Staff Opinion Letter to Coffey, 1998 WL 34323748, at *2 (F.T.C. Feb. 11, 1998); *see* FTC, *Background Checks: What Employers Need to Know*, 2-3, attached as Ex. A.

application for employment." (Ex. D-2.)  Everything in the Disclosure Form relates to the

background check that will be procured, and it requires applicants to click "I Accept" and

"Save and Continue" before proceeding to the next screen. (*Id.*)

The next screen is another stand-alone document conspicuously titled "Background

Check Authorization." (Ex. D, at ¶ 6; Authorization Form, Ex. D-3.)  By e-signing the

Authorization Form, applicants agree that they "read and understand the previous disclosure

and this authorization form" and that they "consent to the preparation and release of

consumer and/or investigative consumer reports to the Company." (*Id.*)  The bottom of the

Authorization Form—not the Disclosure Form—includes "Additional State Law Notices,"

which consist of a few paragraphs of information regarding rights under the laws of four

states. (*Id.*)  Neither form contains any release of liability language. (*Id.*)

**C.     Applicants Vary As To Whether They Have Criminal Backgrounds.**

Most applicants for employment with Amazon have no criminal history, like Bonde.

(Bonde Dep., excerpts attached as Exhibit E, at 26:4-8; K. Roberts Dep., Ex. U, at 18:16-23;

C. Currington Dep., Ex. V, at 15:24-16:9; J. Shuford Dep., Ex. L, at 15:5-9; A. Bastian Dep.,

Ex. N, at 17:7-11; S. Diaz Dep., Ex. O, at 20:10-11; T. Richards Dep., Ex. R, at 15:19-21; A.

Grantlin Dep., Ex. T, at 7:16-18.)  Thus, their background checks do not reflect any criminal

history.  Others, like Hargrett, have extensive criminal histories for multiple recent felony

convictions. (Hargrett Dep., excerpts attached as Ex. F, at 25:14-20, 26:2, 28:19-29:8, 29:12-

14, 33:17-35:24, 37:6-8, 44:7-45:3.)  Still others, like Austin, have a criminal record, but,

because the convictions occurred many years ago, they do not appear on a background check.

(Austin Dep., excerpts attached as Ex. G, at 19:16-24, 21:1-10, 24:9-20, 150:20-153:15.)

These differences yield different results.  Between March 2015 and October 2016, over 90% of those who applied through the Salesforce interface passed the background check.  (Ex. D, at ¶¶ 9-10.)  Bonde and Austin, for example, were hired by Amazon.  (Ex. E, at 14:8-10; Ex. G, at 49:7-21.)  Hargrett, by contrast, was not.  (Ex. F, at 122:1-5.)

### D. <u>Applicants Vary As To Whether They Read The Disclosure Form.</u>

Amazon applicants differ in what they recall about the Disclosure Form and whether they even read it.  Hargrett, for instance, does not recall submitting the Disclosure Form. (Ex. F, at 233:23-234:1, 236:6-237:1, 239:18-20.)  Other applicants never bothered to read the Disclosure Form and just clicked through to the next screen and authorized a background check.  Austin, for instance, has no recollection of whether he saw the Disclosure Form when he applied to Amazon (Ex. G, at 109:23-110:12, 111:20-112:8), but his practice when applying for a job is to "sign everything" and not "really look at anything."  (*Id.* at 90:6-24.) Likewise, former Plaintiff Bonde testified that she never read the Disclosure Form because she does not speak or read English, but her daughter in law translated and then filled out the form for her.  (Ex. E, at 64:22-65:4, 65:9-15, 72:25-73:6, 92:12-15; 96:15-97:23.)

By contrast, as reflected in Exhibit W, numerous other putative class members testified that they read the Disclosure Form fully and carefully at the time they applied for employment with Amazon.  (*See e.g.* Arredondo Decl., at 21:18-23, 41:19-42:5; Bastian Decl., 33:10-34:12; Currington Decl., at 35:12-22; Luna Decl., at 8-13).

### E. <u>Putative Class Members Understood Amazon Would Run A Background Check, Agreed To It, And Were Not Harmed By The Disclosure Form.</u>

Contrary to the allegations in the Complaint, numerous class members have testified that they understood clearly from the Disclosure Form that Amazon would run a background

check on them, agreed to it, and were not confused by the Disclosure Form.  For instance, Hargrett testified that he understood each provision in the Disclosure Form, including that Amazon would perform a background check.  (*Id.* at 237:21-239:13, 239:15-240:15, 241:4-17.)  He found nothing confusing about "anything on this form."  (*Id.* at 240:16, 18-23, 241:18-20.)  Likewise, as reflected in Exhibits J and W, many putative class members have submitted declarations and testified that they understood from the Disclosure Form that a background check was part of Amazon's application process and they readily agreed Amazon could do so.  (*See generally* Exs. J, W; *see also, e.g.*, Ex. L, Shuford Dep., at 11:22-12:7; 38:25-40:3; Ex. O, Diaz Dep., 31:6-15; Ex. P, Rau Dep., at 29:24-30:16).

In fact, numerous class members have testified that because they understood and authorized Amazon to obtain a background check on them, their privacy was not invaded by that background check and they were not otherwise harmed by the Disclosure Form (Ex. L, Shuford Dep., at 35:14-19; Ex. N, Bastian Dep., at 18:18-19:7; Ex. O, Diaz Dep., at 24:24-25:19, 27:14-17, 28:2-4; Ex. R, Richards Dep., at 74:23-75:1; Ex. S, Luna Dep., at 37:18-23; Ex. P, Rau Dep., at 26:1-4), ***even if the Disclosure Form ultimately were found to be illegal***. (Ex. L, Shuford Dep., at 33:11-21; Ex. N, Bastian Dep., at 34:17-35:13; Ex. O, Diaz Dep., at 24:20-26:5; Ex. U, Roberts Dep., at 49:2-50:9; Ex. V, Currington Dep., at 46:17-19, 47:4-9, 53:4-19; Ex. Q, Arredondo Dep., at 57:14-19).

### F.   Remarkably, After Years Of Litigation, Bonde Dismissed Her Claim With Prejudice And The Remaining Plaintiffs Testified That Their FCRA Claims Are Not Based On The Disclosure Form.

Nearly two years after her lawyers filed a complaint against Amazon, Bonde testified that she had never heard of the FCRA and could not identify anything wrong with the

Disclosure Form.  (Ex. E, at 50:2-11, 73:24-74:3, 105:15-25.)  She further testified that her claim stemmed *exclusively* from the circumstance surrounding her *termination* of employment in 2016, after she was hired, which had nothing to do with any background check.  (*Id.* at 17:2-22, 32:6-11, 36:21-37:2, 105:17-25.)  Bonde decided that she no longer wanted to be part of this action and dismissed her claims with prejudice.  (ECF No. 112.)

Similarly, Hargrett testified during his deposition that he could not identify anything wrong with the Disclosure Form.  (Ex. F, at 233:22-234:1, 237:2-15.)[3]  Nor could Austin.  (Ex. G, at 116:17-117:1.)  Both Plaintiffs also confirmed that their FCRA claims are based on an entirely separate document—an Applicant Information Form—because it contains release language.  (Ex. F, at 101:22-102:7, 206:20-209:15, 242:11-22; Ex. G, at 120:17-121:16, 128:21-129:10, 174:10-23.)[4]  The Applicant Information Form is not shown to those who apply through the Salesforce interface and is not the form that Amazon provides to satisfy the FCRA disclosure requirement.  (Ex. D, at ¶ 9.)  Unlike the Applicant Information Form, the Disclosure Form does not have release language.  (Ex. D-2; Ex. F, at 235:21-236:2.)

### G.      Hargrett And Austin Have Different Motivations For Bringing Their Claims, Assert Different Claims, And Seek Different Relief.

#### 1.      Hargrett

Hargrett applied to Amazon's Ruskin fulfillment center in July 2015.  (Am. Compl. ¶ 49.)  Prior to that date, he was convicted of multiple felonies, including possession of controlled substances with the intent to sell, felon in possession of a firearm, and attempting to elude arrest.  (Ex. F, at 25:10-29:8, 29:12-31:23, 33:17-34:24, 37:20-41:5, 44:7-45:3,

---

[3]      The Disclosure Form was part of Exhibit 25 for Hargrett's deposition and Exhibit 3 for Austin's.
[4]      The Applicant Information Form was Exhibit 22 for Hargrett's deposition and Exhibit 4 for Austin's deposition.  A copy of the Applicant Information Form is attached hereto as Exhibit K.

52:21-62:2.)  He recalled at least nine crimes he was convicted for between 2008 and 2014

alone, but could not recall the exact number.  (*Id.*; *see also id.* at 24:15-20.)  For his

convictions, he served time in jail and on house arrest, probation, and in numerous drug

treatment centers.  (*Id.* at 29:4-8, 34:25-35:24, 46:1-4.)

Hargrett knew that Amazon would run a background check on him before he could be

hired.  (*Id.* at 88:4-13, 95:25-96:3.)  He fully "underst[oo]d that employers have a right to see

an individual's criminal record before hiring them."  (E-mail from Hargrett to Amazon

Background Check Support, attached as Ex. H.)  As a result, Hargrett disclosed his

convictions on the employment application.  (Ex. F, at 99:11-19, 173:4-17; *see also* Hargrett

E-mail, Ex. H.)  His application was denied "in part because of the recency, severity, and

nature of [his] convictions."  (E-mail From Background Check Support To Hargrett, attached

as Ex. I.)  His background check was entirely accurate and correct.  (Ex. F, at 47:19-50:14.)

Hargrett filed this lawsuit to understand why his felony convictions made him

ineligible for hire, and believes that Amazon should have discussed the results of his

background check with him.  (*Id.* at 130:1-17, 148:5-14, 152:12-23.)  He testified that his §

1681b(b)(2) claim is based on the Applicant Information Form (not the Disclosure Form) and

seeks to represent a class of people who signed that other form.  (*Id.* at 208:3-209:12, 242:11-

22.)  Hargrett wants monetary damages for this claim.  (Ex. F. at 250:20-251:2)

In sharp contrast to Austin, Hargrett also asserts an individual claim for a violation of

§ 1681b(b)(3)(A) of the FCRA.  (Am. Compl. ¶¶ 87-103.)  He contends that he was not given

a copy of his background check report and summary of FCRA rights before his application

was denied.  (*Id.* ¶¶ 88, 91-92.)  For this claim, he seeks statutory damages.  (*Id.* ¶ 101.)

2.    **Austin**

Plaintiff Michael Austin applied online to the Ruskin fulfillment center in June 2015. (Ex. G, at 52:19-25.)  Although Austin was arrested years ago for multiple felonies, no criminal records were found.  (*Id.* at 19:16-24, 20:20-21:10, 149:3-153:15.)  He was hired by Amazon and worked for about a year before taking medical leave.  (*Id.* at 49:7-21.)

Unlike Hargrett, Austin brings only a § 1681b(b)(2) claim.  Austin testified that his sole claim is based only on the inclusion of waiver language in the Applicant Information Form—not the Disclosure Form.  (*Id.* at 128:21-129:10.)  Austin wants only injunctive relief—not monetary damages.  (Ex. G, at 143:25-144:7.)  He seeks to represent a class of individuals who saw that allegedly improper waiver.  (*Id.* at 155:19-156:9.)  With respect to this case, Austin admittedly has "left everything up to" his attorneys.  (*Id.* at 167:13-168:13.)

H.    **Ignoring Their Own Testimony, Plaintiffs Seek To Certify A Nationwide Class Based On The Disclosure Form.**

The Complaint identifies multiple different forms and improperly merges the Disclosure Form and the Authorization Form.  Nonetheless, in their motion, Plaintiffs seek to assert their § 1681b(b)(2)(A) claims on behalf of a putative nationwide class of applicants who applied online through Salesforce with Amazon, had a background check run, and viewed the Disclosure Form.  (Pls. Mot., at 4-5.)  Plaintiffs' motion should be denied.

III.   **LEGAL ARGUMENT**

It is well settled that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (citation omitted).  Class certification is inappropriate for "most claims."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

To certify a class, Plaintiffs must present evidence to satisfy each requirement of Rule 23(a), and, because Plaintiffs seek monetary relief, they also must demonstrate under Rule 23(b)(3) that common questions of law and fact predominate over individual questions, a class trial is manageable, and it is a superior way of resolving the controversy.  Fed. R. Civ. P. 23(b)(3).

Plaintiffs cannot merely allege the class certification requirements.  *Dukes*, 131 S. Ct. at 2551.  Rather, they must present evidence to meet their burden, and the Court must conduct a "rigorous analysis" to ensure that they have standing to bring their claims and that they have met the requirements of Rule 23(a) and Rule 23(b)(3).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).  Plaintiffs' motion fails nearly all of the required elements.

### A. No Class Can Be Certified Because The Named Plaintiffs Lack Standing.

Although the Eleventh Circuit has "emphasize[d] that any analysis of class certification must begin with the issue of standing," *Griffin*, 823 F.2d at 1482, Plaintiffs' motion barely addresses whether they have standing to bring their claims.  Instead, Plaintiffs largely assume they do because the Court denied Amazon's motion to dismiss. (ECF No. 96, at 9-14.)  Plaintiffs' reliance is misplaced, because the Court based its decision on mere allegations; it did not conduct the "fact-intensive Article III standing inquiry" required at the "class certification stage." *Porter v. Chrysler Grp. LLC*, No. 6:13-CV-555, 2013 WL 6839872, at *2 (M.D. Fla. Dec. 27, 2013).  To meet their evidentiary burden here, Plaintiffs must prove that they suffered an "injury in fact" and "a causal connection between the injury and the conduct complained of." *Foster v. Green Tree Servicing, LLC*, No. 8:15-CV-1878,

2017 WL 5508371, at *3 (M.D. Fla. Nov. 15, 2017); *see Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560 (1992).  Plaintiffs have not done so.

Plaintiffs allege that Amazon's use of the Disclosure Form confused them, denied

them information, and invaded their privacy.  (Am. Compl., ¶¶ 21, 24, 25.)  But as discussed

at length in Amazon's Motion for Summary Judgment, discovery has demonstrated that

Plaintiffs experienced ***none*** of these purported injuries.  (Amazon MSJ, ECF No. 141, at 20-

24).  While Plaintiffs now attempt to mischaracterize their own testimony and repeatedly

(and incorrectly) argue that they have standing simply "because [Amazon's] disclosure was

not standalone" (Pls.' Mot. at 18-20), their own testimony makes clear that they did not

suffer any concrete harm ***as a result of*** any language in that Disclosure Form.  Both

unequivocally acknowledged that they understood Amazon would run a background check

on them ***at the time they applied***; they received all the information required by §

1681b(b)(2); and they agreed to a background check because they wanted a job with

Amazon.  (Amazon MSJ, at 20-24; Ex. F, at 88:4-20, 95:25-96:3, 237:21-241:21; Ex. G, at

60:14-61:25, 62:6-24, 73:17-74:3.)  Thus, Plaintiffs lack standing.  *See Stacy v. Dollar Tree*

*Stores, Inc.*, No. 16-61032-CIV, 2017 WL 3531513, at *6 (S.D. Fla. Aug. 14, 2017)

(applicant lacked standing to bring § 1681b(b)(2)(A) claim because, even if disclosure form

was non-compliant, he understood background check would be run and agreed to it).[5]

---

[5]        Plaintiffs cite *Pedro v. Equifax, Inc.*, 868 F.3d 1275, (11th Cir. 2017), for the proposition that the
"Eleventh Circuit has . . . confirm[ed] that standing attaches to violations of the FCRA which invade a legally
protected interest."  Pls.' Mot. at 18.  But the Eleventh Circuit's analysis in *Pedro* refutes Plaintiffs' position.  In
*Pedro*, the plaintiff claimed that the defendants violated the FCRA when they inaccurately reported her credit,
which, she alleged, caused her credit score to drop and caused her to lose "time . . . attempting to resolve the
credit inaccuracies."  *Pedro*, 868 F.3d at 1280.  The court found such real-world injuries sufficiently "concrete
and particular" to avoid dismissal ***at the pleadings stage***.  *Id.*  Here, by contrast, Plaintiffs can no longer rely

### B.      Plaintiffs Are Not Adequate Class Representatives.

Rule 23(a)(4) requires Plaintiffs to prove that they will adequately protect the interests of class members.  Although Plaintiffs seek to do away with this requirement by arguing that they do not need to have knowledge of the facts or legal theories underlying this litigation (Pls.' Mot., at 13), the Eleventh Circuit has made clear that they must at a minimum demonstrate "[s]ufficient participation in and awareness of the litigation."  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).  Plaintiffs fail this test.

First, they are not sufficiently "familiar with the facts of [this] case." *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322–23 (M.D. Fla. 1997); *Dalton v. FMA Enterprises, Inc.*, 1996 WL 379105, at *6 (M.D. Fla. July 1, 1996). Plaintiffs testified that their claims are based on an ***entirely different form*** than the Disclosure Form and that the basis for their FCRA claim is the inclusion of release language—which they admit does not appear in the Disclosure Form at issue in this case.  (Ex. F, at 101:22-102:7, 208:3-209:12, 213:19-214:13, 242:11-22; Ex. G, at 128:21-129:10.)  In fact, they do not recall seeing the Disclosure Form, and, when they reviewed the Disclosure Form, they could not identify anything wrong with it.  *See, e.g., Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 502 (N.D. Ga. 2006) (finding plaintiff inadequate even though he was "sufficiently familiar with the general nature of th[e] lawsuit" because deposition testimony revealed "he [was] unfamiliar with many of the specific allegations that form[ed] the basis for the claims").

---

upon their allegations, and their testimony shows that they have not suffered any concrete harm, such as a credit score decrease, as a result of the alleged FCRA violation.

Clearly, Plaintiffs are not adequate to represent a class that challenges a Disclosure Form that Plaintiffs do not recall seeing, do not want to challenge, and cannot identify anything wrong with.  Plaintiffs would never be able to give affirmative testimony in support of any § 1681b(b)(2) claim at any class trial.  Their testimony cannot prove their own claims, much less those of anyone else.  *See, e.g.*, *Butterworth*, 171 F.R.D. at 323 (applying rule); *Wein v. Master Collectors, Inc.*, No. 94-2694, 1995 WL 550475, at *3-4 (N.D. Ga. Aug. 16, 1995) (plaintiff inadequate because testimony "misstated the substance of her claim").

Second, Plaintiffs lack basic knowledge about this case.  Plaintiffs do not know how the class is defined, what motions have been filed, what damages the class seeks, the names of any class members, or their specific duties as representatives.  (Ex. F, at 168:19-25, 171:5-20, 176:4-5, 177:7-18, 182:8-22, 242:11-22, 250:5-251:2, 253:10-12, 253:21-254:6; Ex. G, at 65:7-10, 167:13-21, 168:3-13, 170:13-20, 173:3-9.)  Austin does not even know who has the authority to settle the case—he has admittedly "left everything up" to his attorneys.  (*Id.* at 167:22-23, 25, 170:24-171:1).  Thus, Plaintiffs are inadequate class representatives.  *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254 (11th Cir. 2003) (named plaintiff who "abdicated to [his] attorneys the conduct of the case" is inadequate (citation omitted)).

Lastly, as a matter of law, "a class action cannot be certified when its members have opposing interests." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).  Here, Plaintiffs have conceded that their claims are ***not*** based on the Disclosure Form that the putative class members received.  In fact, Plaintiffs themselves seek different forms of relief.  Austin testified that he is not seeking any money from this lawsuit; rather, he wants the removal of the waiver language from the Applicant Information Form that has nothing to do

15

with this case.  (Ex. G, at 143:25-144:17.)  By contrast, Hargrett seeks monetary damages,

and, because he also has asserted an individual claim under § 1681b(b)(3), he seeks different

damages than those sought on behalf of the putative class.  (Ex. F, at 256:3-257:5.)  As a

result, there is a conflict not only between Plaintiffs' theory of the case and the claims

asserted on behalf of other putative class members, but also between Plaintiffs themselves.

### C.      Plaintiffs' Claims Are Not Typical Of The Putative Class.

To demonstrate typicality, Plaintiffs must prove that they "possess the same interest

and suffer the same injury as the class members."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457

U.S. 147, 156 (1982).  The underlying factual circumstances also must be similar.  *See, e.g.*,

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  Plaintiffs

cannot meet their burden.  As stated above, Plaintiffs have sworn that there is nothing wrong

with the Disclosure Form and that it is not the basis for their claims.  Instead, their claims are

based on release language that is nowhere in the Disclosure Form.  This defeats typicality.

Likewise, Plaintiffs' motivation and objectives for filing this lawsuit vary

dramatically and there is no evidence that they are typical of the putative class.  Hargrett filed

the lawsuit to find out why his accurately reported criminal background caused the denial of

his employment.  (Ex. F, at 152:12-22.)  Austin was hired, but filed the lawsuit so Amazon

would remove release language from a form that class members would have never seen or

submitted.  (Ex. G, at 49:7-21, 143:25-144:7).  By contrast, class members have testified that

they have no interest in pursuing claims and seeking relief against Amazon—and Bonde

already has dismissed her claim with prejudice.  (Ex. N, Bastian Dep., at 30:4-31:9; Ex. S,

Luna Dep., at 29:4-31: 17, 34:4-38:8; Ex. M, Clark Dep. at 49:25:50-11).

**D.      Plaintiffs Do Not And Cannot Identify Any Common Evidence That Will Resolve All Claims And Individualized Issues Predominate.**

The Supreme Court has made clear that "'[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class[-]wide proceeding to generate common *answers* apt to drive the resolution of litigation.'" *Dukes*, 564 U.S. at 350 (citation omitted).  Plaintiffs must show, through actual evidence, that these common answers will resolve their claims in "one broad stroke." *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1238 (11th Cir. 2016) (citation omitted).  Plaintiffs also must satisfy the "'demanding'" Rule 23(b)(3) requirement by demonstrating that any such "common" issues "predominate" over individualized ones.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (citation omitted).  In making these determinations, the Court must "take into account [all] 'the claims, defenses, relevant facts, and applicable substantive law . . . .'" *Klay v. Humana,* 382 F.3d 1241, 1254 (11th Cir. 2004).

Here, Plaintiffs ignore their evidentiary burden.  They simply argue that there whether Amazon violated FCRA and whether that violation was "willful" are predominating "common" questions that can be "decided" based upon common unidentified "proof."  (Mot., at 14.)  As the factual record shows, however, there is no common evidence capable of resolving such issues (much less Plaintiffs' claims) on a class-wide basis and individualized issues predominate on key elements of and defenses to Plaintiffs' claims.

**1.      Individualized Issues Predominate As To Standing.**

To be able to bring a claim in federal court under § 1681b(b)(2), a party must have Article III standing.  But as the individualized testimony of numerous absent class members confirms, to assess whether each applicant suffered an "informational," "privacy," or other

17

injury, the Court would need to conduct countless mini-trials based upon highly individualized evidence, such as whether each applicant read the Disclosure Form, understood it, agreed that Amazon could conduct a background check, or would have signed the Disclosure Form regardless of what language it contained.

This evidence will differ by class member.  For instance, numerous putative class members have testified that they were not harmed at all from the Disclosure Form.  (Ex. J & Ex. W).  Thus, they have no standing.  This analysis would need to be repeated for everyone. At a minimum, regardless of what Plaintiffs intend to show with respect to absent class members, Amazon would have the due process right to challenge standing as to each putative class member at any class trial, thereby requiring the Court "to hear and consider individualized evidence."  *Guarisma v. Hyatt Equities, LLC*, No. 1:17-cv-20931 (Dkt. 50) (S.D. Fla. Sept. 28, 2017)*; see also Dukes,* 564 U.S. at 367 (applying rule).

In an attempt to evade these countless mini-trials, Plaintiffs argue that absent class members do not need Article III standing to bring their claims and, thus, the standing analysis is somehow "inapplicable" to them. (Pls.' Mot., at 20-23.)  This is wrong as a matter of law.  The Supreme Court has unambiguously instructed "that Rule 23's requirements must be interpreted in keeping with Article III constraints." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 592 (1997).  And the Rules Enabling Act precludes the use of Rule 23 to "abridge, enlarge or modify any substantive right."  *Dukes*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)); *Windsor*, 521 U.S. at 613.  As a matter of law, absent class members who would not be able to bring a FCRA claim separately against Amazon in federal court, due to lack of standing, cannot now use Rule 23 to have their claims tried in federal court as part of one

class trial.  Plaintiffs' contention that the Court need not conduct any Article III analysis—and thereby could certify a class of individuals who lack Article III standing—would abridge Amazon's due process rights, enlarge the rights of class members, and improperly expand the jurisdiction of this Court.  *See* Fed. R. Civ. P. 82 ("These rules do not extend . . . the jurisdiction of the district courts or the venue of actions in those courts").

Ignoring the Rules Enabling Act, Rule 82, Supreme Court precedent, and constitutional principles, Plaintiffs remarkably contend that this is a "dead argument" by grossly misinterpreting a footnote in *Spokeo*.  (Pls.' Mot., at 21-22.)  Through that footnote, the Supreme Court merely reiterated the well-settled rule that, in a class action, a named plaintiff still must allege that she has been personally injured to have standing, and cannot simply rely on injuries that may have been sustained by putative class members.[6]  *Spokeo* addressed standing at the pleading stage, and certainly did not hold that a court can ignore the need for individualized questions of standing for absent class members at class certification.[7]

Indeed, while the Eleventh Circuit has not yet decided this issue, numerous other Circuits have recognized that the standing of absent class members is relevant at class certification and that a class cannot be certified when it contains members lacking Article III

---

[6]     *See Spokeo*, 136 S. Ct. at 1547, n. 6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other . . . members of the class to which they belong.'").

[7]     Plaintiffs devote considerable space in their motion to the Fifth Circuit's *In re Deepwater Horizon* decision, 739 F.3d 790 (5th Cir. 2014), to suggest that the Court should ignore the fact that their proposed class consists of members who lack Article III standing and an individualized analysis is required to determine whether each class member suffered a concrete injury.  But the Fifth Circuit never reached that conclusion. Rather, the *Deepwater Horizon* court merely "review[ed] the law governing the standard[s] applicable to Article III questions in the . . . context of Rule 23*," id.* at 802, and recognized that, under the facts of that particular case, "the class definition include[d] *only* persons . . . who c[ould] allege causation and injury in accordance with Article III."  *Id.* (emphasis added).  The *Deepwater Horizon* decision therefore is consistent with the general rule that certification is not appropriate if there are predominating individual issues of standing.

standing.  *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision."); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (denying certification); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) (recognizing rule).  In fact, in a recent case involving Plaintiffs' counsel, a court recently rejected Plaintiffs' flawed interpretation of *Spokeo* and denied certification of a FCRA claim because, consistent with the requirements of Article III, "many individualized questions remain about which class members suffered a concrete injury."  *Branch v. GEICO*, No. 3:16-CV-1010, 2018 WL 358504, at *10 (E.D. Va. Jan. 10, 2018).  The same result should apply here.

### 2.  Individualized Issues Predominate As To Which FCRA Form Each Putative Class Member Seeks To Challenge.

To bring a claim under § 1681b(b)(2), each class member must show that the disclosure was not made "in a document that consists solely of the disclosure."  *Id.* § 1681b(b)(2)(A).  But as the record confirms, individualized factual questions will necessarily arise as to which form each putative class member identifies as the alleged violation and seeks to challenge.  For instance, both Hargrett and Austin have testified that their FCRA claim is based upon the purported inclusion of release language in an Applicant Information Form—which Salesforce applicants never even saw.  (Ex. F, at 101:22-102:7, 208:10-13, 242:11-22; Ex. G, at 120:17-121:16, 128:21-129:10, 174:10-23; Ex. D, at ¶ 9.)   Other putative class members recall seeing the Disclosure Form, but entirely understood it and authorized the background check.  (Ex. J; *see also, e.g.*, Ex. S, Luna Dep., at 35:11-14 ("[I]n this case, this job application, I allowed Amazon to do a background check and . . . when I

read [the Disclosure Form], I understood that they were going to do a background check.");
Ex. M, Clark Dep., 13:21-15:12 (same).  Conducting this form-by-form analysis with every
class member would be entirely unmanageable.

Plaintiffs attempt to avoid this fundamental problem by repeatedly contending that
the Court already decided liability in this case.  (Pls.' Mot. at 1, 8, 14.)  Not so.  The Court's
motion to dismiss ruling was not based on a factually developed record, but on Plaintiffs'
allegations, which improperly merged the Disclosure Form (which Plaintiffs cannot identify
anything wrong with) and the Authorization Form (which contains state law disclosures).
The Court never decided whether the Disclosure Form, a stand-alone document viewed on a
single screen, complies with the FCRA.  And the Court did not have the benefit of Plaintiffs'
testimony, which narrows their challenge to the Applicant Information Form—not the
Disclosure Form.  This fundamental question—what FCRA disclosure form serves as the
basis for each claim—will vary by class member.

### 3.     Individualized Issues Predominate As To Willfulness.

Because Plaintiffs appear to seek statutory and punitive damages on behalf of the
putative class (Am. Compl. ¶ 84), they must show that Amazon "willfully fail[ed] to comply"
with § 1681b(b)(2)(A).  15 U.S.C. § 1681n(a)(1)(A).  To do so, they must demonstrate that
Amazon's conduct was intentional or reckless, which the Supreme Court has defined as
"action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it
should be known.'" *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (citation omitted).
This is a fact-intensive inquiry.  (ECF No. 96, at 14-15.)

Plaintiffs argue that common evidence for the willfulness issue exists because Amazon purportedly treated the class uniformly throughout the class period.  (Pls.' Mot. at 10.)  But Plaintiffs ignore their evidentiary burden and identify *no such* common evidence, and for good reason:  whether a company acted willfully depends upon what the company knew at a particular time, including whether there is case law that the inclusion of whatever challenged information in whatever challenged disclosure form violates the FCRA and when that case law was decided.   This evidence will differ by class member—based upon *when* the class member signed the Disclosure Form and *when* the background check was run.

By way of example, the evidence of willfulness applicable to a claim based upon the use of the Disclosure Form in March 2015 would differ from the evidence of willfulness that Hargrett and Austin may try to present, given that their background check reports were run in July 2015.  Plaintiffs allege that willfulness can be inferred because Amazon was sued in another FCRA class action (under a separate FCRA theory) in *Williams v. Amazon.com, Inc.*, No. 15-cv-00542 (N.D. Ill.) (Am. Compl. ¶ 82), but *Williams* was not filed until April 7, 2015; it would have no bearing on the claim of someone who had her background check report run before then.  Nor do Plaintiffs provide any common evidence capable of proving willfulness for all claims of all class members.  The willfulness inquiry will necessitate individualized evidence and analysis as to when an applicant submitted the Disclosure Form, when the background check was run, and the sources of guidance available at that time.

### 4.    Individualized Issues Predominate As To The Relief Sought.

Individual issues also will predominate as to what relief each class member may seek. Austin testified that he expects no compensation, but "just want[s] [Amazon] to stop"

including release language in its FCRA disclosure form for Salesforce applicants (which it does not do; thus, the relief he seeks is nonexistent).  (Ex. G., at 45:6-14).  By contrast, Hargrett contends that he is "entitled to some type of money."  (Ex. F, at 250:20-22.)  Bonde, meanwhile, has voluntarily acknowledged that she is not entitled to *anything*, despite her inclusion within the class definition, because she dismissed her claims with prejudice.

Critically, other putative class members have testified that they disagree with the decision to sue Amazon and do not want money from Amazon through this lawsuit, in part because they were not harmed by the Disclosure Form.  (Ex. N, Bastian Dep., at 30:4-31:9; Ex. S, Luna Dep., at 29:4-31:17, 34:4-38:8; Ex. M, Clark Dep. at 50:4-11.)  Still other putative class members may want "actual damages" (rather than statutory damages) based upon a negligence theory, thereby avoiding a showing of "willfulness."  15 U.S.C. § 1681o(1)(A); *see also Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *12 (D. Ariz. Dec. 14, 2016) (denying certification of FCRA claim because of "potential differentiation" in relief sought and fact that some class member may want actual damages).  Given that Plaintiffs' class motion does not expressly limit the FCRA claim brought on behalf of the class to a particular type of relief or damages (Pls.' Mot. at 9-10), individualized questions of relief will vary by putative class member.

###        5.    Individualized Issues Predominate As To Damages.

Even if all putative class members were seeking only statutory damages, individualized issues would predominate as to the amount of any award.  FCRA provides for statutory damages in the amount of $100 and $1000.  15 U.S.C. § 1681n(a)(1)(A).  Because the FCRA does not provide "further guidance as to how to decide what amount to award a

plaintiff[,] . . . any individual plaintiff's actual injury [also] may be relevant to calculating their statutory damage amount." *Mix*, 2016 WL 7229140, at *13.  That is the case here.

The amount of any statutory damages for each alleged violation does not hinge solely upon Amazon's conduct—but upon the impact, if any, of the disclosure language on the class member, including whether he or she has suffered any injury.  This, in turn, will vary greatly depending on the form on which the class member bases her claim, whether she understood it, and her criminal history.  *Id.* (denying certification on FCRA claim in part because "there could be wide variation between class members who suffered actual damages—which should be reflected in the statutory award they receive—and those who did not").

**E.**   **A Class Action Is Not Superior And Plaintiffs Offer No Trial Plan.**

Plaintiffs have not and cannot demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In the Eleventh Circuit, when common issues do not predominate, "class treatment would be either singularly inefficient . . . or unjust." *Klay*, 382 F.3d at 1269 (citations omitted).  Notably, Plaintiffs still have not submitted any trial plan to demonstrate how it would be feasible to address the many predominating individualized issues identified above in one trial, including whether the more than 170,000 putative class members have suffered a concrete and particularized injury—and, thus, whether they have standing.  Nor do Plaintiffs make any effort to show what common evidence they would use at any class trial, given their own testimony (after years of litigation) that they are not challenging the Disclosure Form Amazon used.  This is fatal to their motion.  *See Vega*, 564 F.3d at 1278-79 (certification denied when there was no "trial plan that would feasibly address" individualized issues).

24

Furthermore, a class action is not "superior" because each class member has an incentive to bring and control her own § 1681b(b)(2) claim, as a result of the statutory damages available under the FCRA and its provision of attorney's fees and costs. *See* 15 U.S.C. § 1681n(a)(3); *see Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 669 (N.D. Ala. 2010) (finding that the availability of attorneys' fees and statutory damages rendered individual suits superior to a class action). This is precisely what Hargrett has done with his individual claim under § 1681b(b)(3), and what Bonde recognized when she dismissed her claim with prejudice. Each putative class member should be allowed to bring and control her own case, if he believes she has somehow been wronged.

Lastly, certification of Plaintiffs' proposed class is "particularly undesirable" in this case because "the potential damages available . . . are grossly disproportionate to the conduct at issue." *Klay*, 382 F.3d at 1271. This is especially true for technical violations of a "'complex regulatory scheme, subject to different reasonable interpretations.'" *Id.* (quoting *London*, 340 F.3d 1246, 1255 n. 5). Here, Plaintiffs have not provided any evidence showing that anyone suffered harm as a result of Amazon's Disclosure Form. Nonetheless, if a class is certified, Amazon would face tens, if not hundreds, of millions of dollars in statutory damages and attorney's fees based upon language the named Plaintiffs do not challenge in a Disclosure Form that the named Plaintiffs do not ever recall signing. Any such damages amount would "raise serious constitutional problems implicating the Defendant's Due Process rights." *Ehren v. Moon, Inc.*, No. 09-21222-CIV, 2010 WL 5014712, at *2 (S.D. Fla. Dec. 3, 2010).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' class certification motion.

Dated: January 31, 2018

/s/ Brian M. Ercole
Brian M. Ercole
Florida Bar No. 0102189
Morgan, Lewis & Bockius LLP
5300 Southeast Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.415.3416
Facsimile: 305.415.3001
brian.ercole@morganlewis.com

Gregory T. Parks (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5170
Facsimile: 215.963.5001
gregory.parks@morganlewis.com

Paul C. Evans *(*admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5431
Facsimile: 215.963.5001
paul.evans@morganlewis.com

Jacqueline C. Gorbey (admitted *pro hac vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: 215.963.5486
Facsimile: 215.963.5001
jacqueline.gorbey@morganlewis.com

*Attorneys for Defendant Amazon.com DEDC, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2018, I caused a true and correct copy of

Defendant's Memorandum Of Law In Opposition To Plaintiffs' Renewed Motion For Class

Certification to be served via the Court's ECF system on all counsel of record.


 */s/ Brian M. Ercole*
Brian M. Ercole